170 F.3d 167
 14 IER Cases 1558
 LATINO OFFICERS ASSOCIATION, Anthony Miranda, and Hiram
Monserrate, Plaintiffs-Appellees,
v.
Howard SAFIR, Commissioner of the New York City Police
Department, and the New York City Police
Department, Defendants-Appellants.
 Docket No. 97-7957.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 21, 1998.
Decided March 5, 1999.
 
 Margaret G. King, Office of the Corporation Counsel for the City of New York, New York, N.Y. (Barry P. Schwartz, Chlarens Orsland, Leonard Koerner, on the brief) for Defendants-Appellants.
 Christopher Dunn, New York Civil Liberties Union, New York, N.Y. (Arthur N. Eisenberg, Norman Siegel, on the brief) for Plaintiffs-Appellees.
 Before: WALKER and McLAUGHLIN, Circuit Judges, and PRESKA, District Judge.*
 JOHN M. WALKER, Jr., Circuit Judge:
 
 
 1
 Defendants-appellants, the New York City Police Department ("NYPD") and its Commissioner, Howard Safir (collectively the "City"), appeal from the July 30, 1997, order of the United States District Court for the Southern District of New York (Sidney H. Stein, District Judge ), enjoining the enforcement of NYPD Patrol Guide Procedure 114-8 (the "Procedure"), which restricts officers' public statements regarding police department matters. See Latino Officers Ass'n v. Safir, No. 97-3143, 1997 WL 426099 (S.D.N.Y. July 30, 1997), 1997 WL 426099 ("LOA "). The Procedure, as it was in effect when this case was before the district court, required officers to provide notice to the police department in advance of any speaking engagement, to obtain approval before speaking, and to provide a written summary of the speech the next business day after the engagement. It further prohibited an officer from speaking at a public hearing unless a superior officer was present. Following a hearing, the district court held that the Procedure violated the officers' First Amendment rights, and entered a preliminary injunction barring its enforcement. The City appealed.
 
 
 2
 The City subsequently stipulated to withdraw its appeal from the district court's invalidation of the approval requirement and the requirement that a supervisor be present at any public hearing at which an officer speaks. Accordingly, the notice and reporting requirements of the Procedure are the only issues that remain before us. For the reasons set forth below, we find that the record is insufficient to justify a preliminary injunction against enforcement of these two provisions. We therefore vacate the district court's order enjoining enforcement of the notice and reporting requirements. Our decision is without prejudice to plaintiffs' ability to seek a permanent injunction against enforcement of these same provisions upon a more complete record.
 
 BACKGROUND
 
 3
 Plaintiffs brought this action under 42 U.S.C. § 1983 challenging NYPD Patrol Guide Procedure 114-8 on the ground that it violates their First Amendment right to freedom of speech. The Procedure's stated purpose is "[t]o notify the Police Commissioner when a member of the service (uniformed or civilian), plans to give testimony or make an oral or written statement, before a governmental agency or private organization." The procedure applies to
 
 
 4
 members acting in an official or non-official capacity, invited or subpoenaed to testify or make a statement re: department policy or positions on public matters, or to give character, opinion or expert testimony, at any public hearing or before a governmental agency, investigating body, legislative committee, administrative agency or private organization, etc.
 
 
 5
 The Procedure that was in effect for over ten years, until the parties entered into the stipulation in this case, contained four requirements: (1) the notice requirement, which provided in pertinent part that a member of the NYPD invited or subpoenaed to testify or make a statement before a governmental agency or private organization must prepare a written notification indicating the name and location of the agency or organization and the type of proceeding, to be submitted five business days before the appearance; (2) the approval requirement, which provided that prior written approval from the Commissioner was mandatory for voluntary (i.e. non-subpoenaed) appearances; (3) the reporting requirement, which provided that the officer must deliver a summary of the testimony or statement given, including questions and answers, to the Commissioner on the next business day after the appearance; and (4) the supervision requirement, which provided that no member of the department could give testimony or make a statement at a public hearing without the presence of his or her supervisor, unless prior specific approval had been given.
 
 
 6
 The Latino Officers' Association ("LOA") was formed in 1996 for the purpose of advancing the interests of Latino members of the NYPD. It has approximately 1500 members, and plaintiffs Miranda and Monserrate serve as President and Vice-President, respectively, of the organization. Plaintiffs claim that they first became aware that the procedure applied to them in 1997, and that they filed suit shortly thereafter.
 
 
 7
 As recounted in the complaint,
 
 
 8
 [early] in 1997 LOA officers start[ed] receiving warnings that the NYPD intended to start punishing them for the public statements that they had been making. These warnings came in the form of anonymous calls to the LOA's office and in the form of comments made to LOA members, who in turn relayed the comments to LOA's officers. The LOA officers believed these warnings to be credible and understood them to mean that the Department intended to enforce [the procedure] against them.
 
 
 9
 Miranda stated that on January 14, 1997, he unsuccessfully sought the NYPD Legal Bureau's permission to accept an invitation to appear before the City Council Committee on Civil Service and Labor. As a consequence, he did not speak before the Committee. On a second occasion, April 17, 1997, Miranda telephoned the NYPD Legal Bureau to request permission to speak at an LOA press conference regarding NYPD statistics suggesting that minority officers were disproportionately charged with disciplinary offenses. Again, Miranda recounts that he was denied permission and that he did not speak at the conference. As a consequence of the April 17 denial of permission, Miranda claims that he and other members of the LOA severely curtailed their public speaking over the ensuing months. For example, the LOA members allege that they turned down invitations to appear on radio programs and television broadcasts, to speak at conferences and public gatherings, and to be interviewed for the New York Times.
 
 
 10
 The City denies that the January 14 denial of permission to speak to the City Council Committee occurred. If Miranda had made such a request to speak in his capacity as President of the LOA, the City contends, it most likely would have been approved in the normal course of business. With respect to the April 17 request, the City contends that Miranda inaccurately conveyed the circumstances of that exchange. According to the lieutenant who spoke with Miranda, Miranda was informed that he could not speak to the press on behalf of the NYPD, but that if he wanted to speak on behalf of the LOA, he could do so and did not have to ask permission.
 
 
 11
 Throughout this litigation, the City has maintained that the Procedure does not govern NYPD members' communications with the press. The release to the media of information concerning official business of the NYPD is governed by a separate provision, Patrol Guide Procedure 116-51, which encourages officers "to facilitate the accurate, timely and proper dissemination of information" to the public. According to the City, officers' contacts with the media concerning non-official Department business are not governed by either procedure.
 
 
 12
 Following a hearing at which the sole evidence consisted of the affidavits that had been submitted by plaintiffs and other supervisory officers of the NYPD, the district court ruled that plaintiffs had demonstrated irreparable harm in the absence of an injunction, and a likelihood of success on the merits of their First Amendment challenge to the Procedure. The stipulation modifying the policy, and this court's decision in Harman v. City of New York, 140 F.3d 111 (2d Cir.1998), both of which have framed the nature of this appeal, followed.
 
 DISCUSSION
 
 13
 We first address plaintiffs' standing to bring this suit. The City argues that LOA lacks standing because it failed to demonstrate either a concrete prior or future harm as a result of the Procedure. The City asserts that the occasions on which LOA members allegedly were denied permission to speak would not have been governed by the challenged provision, were not proven by verifiable evidence, and, if the denials did occur, they were contrary to policy. The City also contends that LOA's allegations that its members declined to speak for fear of reprisals is insufficient to confer standing. We disagree.
 
 
 14
 In order to have standing, a plaintiff must: (1) have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotations and citations omitted); (2) show that the injury is caused by the challenged activity; and (3) show that the injury is apt to be redressed by a remedy the court is prepared to give. See id. at 560-61, 112 S.Ct. 2130. Allegations of a "subjective chill [of First Amendment rights] are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). "Rather, to establish standing in this manner, a plaintiff must proffer some objective evidence to substantiate his claim that the challenged [regulation] has deterred him from engaging in protected activity." Bordell v. General Elec. Co., 922 F.2d 1057, 1060-61 (2d Cir.1991).
 
 
 15
 LOA adduced sufficient evidence to substantiate its claim that the Procedure deterred its members from exercising their First Amendment rights. Miranda averred that he was denied permission to speak publicly on one occasion. In addition, in the two weeks prior to filing the complaint, he or members of his group were asked nine times to make public comments about non-confidential police practices. According to Miranda, in each case the requested speaker declined to speak because of NYPD policy. Finally, based on the history of his organization, Miranda speculated that he would be asked in the future to make such comments. Such evidence satisfies the standing requirement. See Meese v. Keene, 481 U.S. 465, 473, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987) (affidavit stating that plaintiff "was deterred from exhibiting [his] films" and that he would suffer personal, political, and professional harm if he chose to show the films sufficient). Cf. Davis v. Village Park II Realty Co., 578 F.2d 461, 463 (2d Cir.1978) (allegations in complaint of plaintiff's anxiety, distress, and hardship while she persisted in her First Amendment activity sufficient).
 
 
 16
 Having determined that plaintiffs have standing, we turn to the preliminary injunction. This court reviews a decision to grant a preliminary injunction for an abuse of discretion. See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 999 (2d Cir.1997). In order to justify the award of a preliminary injunction, the moving party must establish two elements. First, the party must demonstrate that it will suffer irreparable harm in the absence of the requested relief. See Bery v. City of New York, 97 F.3d 689, 693 (2d Cir.1996), cert. denied, 520 U.S. 1251, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997); Hsu v. Roslyn Union Free Sch. Dist. No. 3, 85 F.3d 839, 853 (2d Cir.1996). Second, the party must demonstrate either that it "is likely to succeed on the merits, or [that] there are 'sufficiently serious questions going to the merits' and the 'balance of hardships tips decidedly' its way." Hsu, 85 F.3d at 853 (quoting Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir.1991)). Where, as here, the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party can demonstrate, in addition to irreparable harm, a likelihood of success on the merits. See New York Magazine v. Metropolitan Transp. Auth., 136 F.3d 123, 127 (2d Cir.), cert. denied, --- U.S. ----, 119 S.Ct. 68, 142 L.Ed.2d 53 (1998); Bery, 97 F.3d at 694.
 
 
 17
 The district court found that "the terms of P.G. 114-8 alone are sufficient to give rise to a finding of irreparable harm." LOA, 1997 WL 426099, at * 4. The district court continued,
 
 
 18
 the relevant harm in this case arises not from the fact that a request to speak has actually been denied, or that particular sanctions have been imposed, but rather from plaintiffs' obligation to provide advance notice, obtain permission, and report their speech to their employer, all under a threat--even if vague--of professional discipline.... [T]he existence of these requirements raises the danger of self-censorship among NYPD employees, and thus threatens their exercise of First Amendment rights.
 
 
 19
 Id.
 
 
 20
 In light of the changed posture of the case since the district court's ruling, we now reach a different conclusion from that of the district court. Following the stipulation, plaintiffs no longer need seek permission to speak before an audience; they only must notify the NYPD that they intend to speak, and provide a summary of their comments after-the-fact. Although we acknowledge that, as a theoretical matter, this may make some officers more reluctant to speak than they would be if they did not have to bring their speech to the Department's attention, see Weaver v. United States Information Agency, 87 F.3d 1429, 1455 (D.C.Cir.1996), cert. denied, 520 U.S. 1251, 117 S.Ct. 2407, 138 L.Ed.2d 174 (1997) (Wald, J., dissenting), this kind of conjectural chill is not sufficient to establish real and imminent irreparable harm. See, e.g., Levin v. Harleston, 966 F.2d 85, 90 (2d Cir.1992); American Postal Workers Union v. United States Postal Serv., 766 F.2d 715, 722 (2d Cir.1985). Cf. Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)(threats of discharge constitute real and imminent irreparable harm); Bery, 97 F.3d at 693-94 (restrictions on vendors' right to sell visual art in public spaces constitute real and imminent irreparable harm).
 
 
 21
 Nor are we convinced that plaintiffs are likely to succeed on the merits of their challenge to the redefined procedure. When confronted with a regulation that restrains the speech of government employees, a reviewing court must apply the balancing test announced in Pickering v. Board of Educ. of Township High Sch. Dist. 205, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). See Lewis v. Cowen, 165 F.3d 154, 161 (2d Cir.1999). That is, the court must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568, 88 S.Ct. 1731. "Where a restraint is accomplished through a generally applicable statute or regulation, as opposed to a particularized disciplinary action, we must also make sure that the regulation's sweep is 'reasonably necessary to protect the efficiency of the public service.' " Weaver, 87 F.3d at 1439 (quoting United States v. National Treasury Employees Union, 513 U.S. 454, 474, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995)("NTEU ")). See also Harman, 140 F.3d at 118. We find that this is the appropriate framework of analysis even where the regulations at issue do not purport to ban speech, but instead impose indirect burdens on speech. See, e.g., NTEU, 513 U.S. at 465-66, 115 S.Ct. 1003; Weaver, 87 F.3d at 1440; Sanjour v. Environmental Protection Agency, 56 F.3d 85, 93-94 (D.C.Cir.1995).
 
 
 22
 In this case, the interests on either side of the balance are readily identified. The employees are interested in the unfettered dissemination of their views regarding the police department. This is undoubtedly a strong interest. As the Supreme Court has noted, "Government employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions...." Waters v. Churchill, 511 U.S. 661, 674, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion). On the other side of the balance is the City's interest in staying informed of police officers' public statements about the Department. In light of the sensitive nature of police work, this too is a strong interest. We note the City's undisputed representation that it is far easier for the Department to respond to inquiries from the media and the community at large, and to correct misinformation, when it is provided the information by the officers themselves than if the Department must gather it without their assistance.
 
 
 23
 On the basis of the current record, we find that the notice and reporting procedure strikes a reasonable balance between these competing interests. See Snepp v. United States, 444 U.S. 507, 509 n. 3, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980) (per curiam) (approving CIA's ability to impose "reasonable restrictions on employee activities that in other contexts might be protected by the First Amendment"). Unlike in Harman, 140 F.3d at 116, on which plaintiffs rely, the Procedure as now modified does not require employees to obtain approval before speaking to the press. Harman involved a challenge to the policy of New York City's Administration for Children's Services and Human Resources Administration requiring all media contacts to be directed to the agencies' media relations office, "before any information is conveyed by an employee or before any commitments are made by an employee to convey information." Id. The City defended the policy as necessary to prevent the disclosure of confidential information, and as helpful in promoting "the effective and efficient operation of the agencies by coordinating all agency contacts with the media." Id. The City further contended that the policy would not prohibit employees from "commenting on the non-confidential operations of the agency once [the media relations office] ha[s] ensured that the proposed speech is consistent with the efficient and effective operation of the agency." Id. at 119.
 
 
 24
 This court concluded that the policy implicated the following First Amendment concerns: (1) in mandating approval from an employee's superiors, it would discourage speakers with dissenting views from coming forward; (2) it provided no time limit for review to ensure that commentary would not be rendered moot by delay; and (3) it lacked objective standards to limit the discretion of the agency decision-maker. See id. at 120. Weighing these concerns against the City's proffered justifications for the policy, we found the City's reasons insufficient to warrant such a broad-based prior restraint on speech. See id. at 123-24.
 
 
 25
 None of the Harman concerns are present in this case. In the absence of the approval requirement, there is no opportunity for the City to suppress or delay speech expressing dissenting views. The sole concern that exists is the potential that, because employees must alert the Department to the fact that they will be speaking, some individuals with unpopular views will be reluctant to come forward. As noted above, however, we find that plaintiffs have not adequately demonstrated that there is a real threat that the notice and reporting requirements, divorced from the approval and supervision requirements, will chill their speech. In the absence of a record to support plaintiffs' contention in this regard, we are unable to conclude that the procedure is not justified as a "reasonable restriction[ ] on employee activities that in other contexts might be protected by the First Amendment," Snepp, 444 U.S. at 509 n. 3, 100 S.Ct. 763, or as "reasonably necessary to protect the efficiency of the public service" provided by the Police Department. NTEU, 513 U.S. at 474, 115 S.Ct. 1003.
 
 
 26
 In reaching our decision, we are cognizant of the fact that this case was litigated before the district court as a challenge to the four requirements that originally comprised the Procedure, and that plaintiffs therefore may not have focused on developing the record to support their contention that notice and reporting alone significantly chill their speech. We therefore vacate the district court's entry of a preliminary injunction against enforcement of the notice and reporting requirements, but with the understanding that plaintiffs are free to try to seek a permanent injunction upon a more complete record.
 
 CONCLUSION
 
 27
 The order of the district court entering a preliminary injunction against enforcement of the notice and reporting requirements of Police Guide Procedure 114-8 is hereby vacated.
 
 
 
 *
 The Honorable Loretta A. Preska, of the United States District Court for the Southern District of New York, sitting by designation