Pastor John **AMANDOLA** and Romans Chapter Ten Ministries, Inc., Plaintiffs–Appellants,

v.

**TOWN OF BABYLON** and James Namely, Commissioner of the Parks Department, Commissioner of General Services, in his individual and official capacity, Defendants–Appellees.

No. 00–9006.

United States Court of Appeals, Second Circuit.

Argued March 12, 2001.

Decided May 25, 2001.

Vincent P. McCarthy, American Center for Law and Justice Northeast, Inc., New Milford, CT (Ann–Louise Lohr, Robert W. Ash, Joseph Infranco, on the brief), for Plaintiffs–Appellants.

Patricia Howlett, Assistant Town Attorney, Lindenhurst, N.Y. (Lynne A. Bizzarro, Town Attorney, on the brief), for Defendants–Appellees.

Before JACOBS, SOTOMAYOR, Circuit Judges, and BERTELSMAN, District Judge.*

PER CURIAM:

Plaintiffs–Appellants Romans Chapter Ten Ministries, Inc. (the "Church"), a small evangelical Christian church, and the Church's pastor, Pastor John Amandola ("Amandola") commenced a civil rights action against defendants-appellees Town of Babylon (the "Town") and James Namely, the Town's Commissioner of General Services, pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that the Town's revocation of their permit to use a Town facility for religious worship services constituted a violation of their right to freedom of speech under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs also sought a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65(a), requiring the Town to reinstate their permit to use the Annex for this purpose. The district court denied plaintiffs' motion for a preliminary injunction. Electing to reach the merits of plaintiffs' First Amendment claim, we reverse the district court's order denying the motion for a preliminary injunction and remand for entry of a declaratory judgment in favor of plaintiffs.

## BACKGROUND

The Town owns and maintains a facility known as the Town Hall Annex (the "Annex"). The building has a gymnasium and approximately fifteen small meeting rooms. The majority of the building is used for Town offices, but three or four of the rooms are open for community use. An organization wishing to use one of these rooms is given an application and a copy of the Town's "Rules and Regulations For Use of Town of Babylon Facilities" (the "written policy"). Approval of the application is contingent, *inter alia*, on the submission of a certificate of insurance coverage. Ultimate authority for approving an application, however, is vested in Commissioner Namely.

In November 1998, the plaintiffs completed an application to use the Annex for purposes of Bible study. Plaintiffs requested use of the Annex every Thursday evening and Sunday morning during 1999. At the time the application was submitted, the Church's twelve members had been meeting twice a week at Amandola's residence across from the Annex.

The plaintiffs' application to use the facilities was approved. They met in the Annex on two consecutive Sundays and one Thursday in the month of January 1999. In the week following the second Sunday meeting, Amandola placed an advertisement in a local classified ad publication announcing Romans Chapter Ten as a "new ministry" and inviting the public to attend its Thursday evening Bible study meetings and Sunday morning services at the Annex. Following the running of the advertizement, Namely received an angry phone call from a Town resident complaining that the Annex was being used for church services. Shortly thereafter, Namely revoked the Church's permit to use the Annex, at which point the Church resumed holding its meetings at Amandola's residence.

Plaintiff commenced this action on November 17, 1999. The district judge referred the motion for a preliminary injunction to a magistrate judge for his report

---

* The Honorable William O. Bertelsman, United States District Court for the Eastern District of Kentucky, sitting by designation.

and recommendation.[1] The magistrate judge conducted a two-day evidentiary hearing, at which Amandola and Namely, among others, testified. Finding that plaintiffs had established both irreparable harm and a likelihood of success on the merits, *see Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir.2000), the magistrate judge recommended that the motion for a preliminary injunction be granted.

More specifically, with respect to the irreparable harm requirement, the magistrate judge noted that, pursuant to *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."), this Court has suggested that a rebuttable presumption of irreparable harm arises in First Amendment cases. *See Tunick*, 209 F.3d at 70; *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir.1999); *Bery v. City of New York*, 97 F.3d 689, 694 (2d Cir.1996); *Hsu v. Roslyn Union Free Sch. Dist.*, 85 F.3d 839, 853–54 (2d Cir.1996). Finding that plaintiffs' delay in moving for a preliminary injunction was insufficient to overcome this presumption, the magistrate judge concluded that plaintiffs had established irreparable harm.

With respect to the likelihood of success on the merits requirement, the magistrate judge began by finding that the Town's written policy created a limited public forum. After then acknowledging that the Town could have thus placed "restrictions on access [to this forum] based on speaker identity and subject matter … if 'the distinctions drawn [were] reasonable in light of the purpose served by the forum and [were] viewpoint neutral,'" *Bronx Household of Faith v. Community Sch. Dist. No. 10*, 127 F.3d 207, 211 (2d Cir. 1997) (quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)), the magistrate judge found, first, that the Town's written policy did not constitute such a "restriction of access" policy because it was silent on the issue of whether Town facilities could be used for religious purposes. He found, second, that Commissioner Namely's subjective "unwritten policy" was neither reasonable nor viewpoint neutral because, while it generally permitted the Annex to be used for religious services, it arbitrarily singled out for exclusion religious services, such as plaintiffs', that involve proselytizing and "altar calls." The magistrate judge therefore found that plaintiffs were likely to succeed on the merits of their First Amendment claim.

The magistrate judge tempered his recommendation that the motion be granted, however, with the further recommendation that any preliminary injunction be made "subject to any lawful modification in policy" by the Town.[2]

On review of the Report and Recommendation and the parties' objections thereto, the district court found that plaintiffs had failed to establish irreparable harm. In reaching this conclusion, the court relied on a line of our cases suggesting that, even if a complaint alleges First Amendment injuries, irreparable harm must be proven—rather than merely pre-

1. A magistrate judge is not permitted to decide a motion for a preliminary injunction. 28 U.S.C. § 636(b)(1)(A); *EEOC v. Local 638*, 81 F.3d 1162, 1182 (2d Cir.1996).

2. It may be that the Town could have excluded plaintiffs from use of the hall if it had

adopted a reasonable, viewpoint neutral written policy. *See Good News Club v. Milford Central School*, 202 F.3d 502, 509 (2d Cir.) cert. granted, —— U.S. ——, 121 S.Ct. 296, 148 L.Ed.2d 238 (2000).

sumed—by establishing an actual chilling effect. *See Latino Officers Ass'n v. Safir,* 170 F.3d 167, 171 (2d Cir.1999); *Charette v. Town of Oyster Bay,* 159 F.3d 749, 755 (2d Cir.1998); *Time Warner Cable v. Bloomberg L.P.,* 118 F.3d 917, 924 (2d Cir.1997); *Savage v. Gorski,* 850 F.2d 64, 67–68 (2d Cir.1988); *Am. Postal Workers Union, AFL–CIO v. United States Postal Serv.,* 766 F.2d 715, 722 (2d Cir.1985). Having concluded that plaintiffs failed to satisfy the irreparable harm requirement, the district court found it unnecessary to consider whether plaintiffs were likely to succeed on the merits of their claim.

Plaintiffs thereafter timely appealed.

## DISCUSSION

### I. The Preliminary Injunction

■ We must perforce acknowledge that this Court has not spoken with a single voice on the issue of whether irreparable harm may be presumed with respect to complaints alleging the abridgement of First Amendment rights. *Compare, e.g., Tunick,* 209 F.3d at 70 (presuming irreparable harm) *with, e.g., Latino Officers,* 170 F.3d at 171 (requiring a showing of irreparable harm). We need not address any tension between these two lines of cases, however, because this is one of those rare cases in which the appellate court should not limit itself to the issue of preliminary injunctive relief, but should proceed to decide the case on the merits based on the undisputed facts.

In *Hurwitz v. Directors Guild of Am., Inc.,* 364 F.2d 67, 70 (2d Cir.1966), we stated that

> [t]he Judicial Code merely states that 'The courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders ... refusing ... injunctions.' 28 U.S.C. § 1292(a)(1). As a general rule, when an appeal is taken

from the grant or denial of a preliminary injunction, the reviewing court will go no further into the merits than is necessary to decide the interlocutory appeal. *See Ex parte National Enameling & Stamping Co.,* 201 U.S. 156, 162, 26 S.Ct. 404, 50 L.Ed. 707 (1906); *Drittel v. Friedman,* 154 F.2d 653 (2d Cir.1946); *Sheldon v. Moredall Realty Corp.,* 95 F.2d 48 (2d Cir.1938); 6 Moore, Federal Practice P54.08(1) (2 ed.1965). However, this rule is subject to a general exception—the appellate court may dismiss the complaint on the merits if its examination of the record upon an interlocutory appeal reveals that the case is entirely void of merit. *See, e.g., Mast, Foos & Co. v. Stover Mfg. Co.,* 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856 (1900); *Sheldon v. Moredall Realty Corp., supra;* 7 Moore P65.21, at p. 1702 (2 ed.1955).

> Such an exception serves the obvious interest of economy of litigation, and this interest is equally served if the appellate court directs a verdict for plaintiff in an appropriate case.

*Accord Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 757, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986), *overruled on other grounds by Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Campaign for Family Farms v. Glickman,* 200 F.3d 1180, 1186–87 (8th Cir.2000) (applying *Hurwitz*).

Relying on the second of these exceptions, *Hurwitz* directed entry of judgment on the merits, although the appeal, as here, concerned only the denial of a preliminary injunction. There, as here, the ultimate issue was the validity of a restraint on First Amendment rights; the issue had been fully briefed and argued in the trial and appellate courts; and the invalidity of the provision infringing plain-

tiffs' constitutional rights was readily apparent. Therefore, "[f]inding no reason why the cautious exercise of [the power to address the merits] would be undesirable, we conclude that we may direct the entry of a judgment for the plaintiffs here." *Id.*

■ Our reaching of the merits in this case without notice to the parties does not constitute a violation of the Town's due process rights. *Hurwitz* does not require notice to the parties. And, in any event, our findings on the merits are based on the undisputed facts and the Town has fully briefed and argued its position on the merits. *See Callaway v. Block,* 763 F.2d 1283, 1287 & n. 6 (11th Cir.1985) (approving *Hurwitz* manoeuvre "as long as the facts are not disputed and the parties have presented their arguments to the court").

## II. The First Amendment Claim

■ It is fundamental First Amendment jurisprudence that where a municipality requires a permit for expressive activity the "scheme" for issuance of the permit "must set objective standards governing the grant or denial of [the permit] in order to ensure that the officials not have the 'power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers.'" *Charette v. Town of Oyster Bay,* 159 F.3d 749, 754 (2d Cir.1998) (quoting *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 759, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)). Furthermore, "[d]iscrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger v. Rector*

*and Visitors of the Univ. of Va.,* 515 U.S. 819, 828, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). However, "[r]estrictions on speech in a limited public forum will withstand First Amendment challenge if they are reasonable and viewpoint neutral." *Good News Club v. Milford Central School,* 202 F.3d 502, 509 (2d Cir.), *cert. granted,* ── U.S. ──, 121 S.Ct. 296, 148 L.Ed.2d 238 (2000).

■ As the magistrate judge correctly found, the Town's written policy created a limited public forum. Because the written policy itself was utterly silent on the issue of whether the Annex could be used for religious activities of any kind, it could not serve as the basis for a reasonable, viewpoint neutral exclusion from the Annex of religious worship services, such as those conducted by the Church. Indeed, in providing that "[t]he Town reserves the right to refuse or terminate permission to use any Town facility for any reason," the written policy constituted an unconstitutional prior restraint on speech that gave Commissioner Namely unfettered discretion "to discriminate based on the content or viewpoint of speech." *City of Lakewood,* 486 U.S. at 759, 108 S.Ct. 2138. Namely did precisely that when he, and he alone, decided that, while religious worship services were generally permitted in the Annex, religious worship services involving proselytizing were not permitted. Therefore, we hold that the Town's revocation of plaintiffs' permit to use the Annex for their worship services violated plaintiffs' First Amendment right to free speech.[3]

---

**3.** Our holding in *Good News Club* is distinguishable because the written use policy in question there explicitly provided that the school premises were not to be used for "religious purposes." *Good News Club,* 202 F.3d at 504. A majority of the panel upheld the school's exclusion of the Club from school premises based upon a finding that the Club's

activities involved religious instruction and prayer rather than the teaching of morals from a religious perspective. *Id.* at 508–11. Here, in contrast, the Town's written policy was silent on the use of the Annex for religious purposes and Namely's exclusion of plaintiffs from the Annex was based on an

## CONCLUSION

For the reasons discussed, we hold that plaintiffs are entitled to declaratory relief to the effect that the Town's written policy, as it stands on the present record, is constitutionally invalid on its face and as applied to plaintiffs. We therefore reverse the district court's denial of plaintiffs' motion for a preliminary injunction and remand for entry of a judgment embodying such a declaration of rights. Because we are confident that the City will conform its conduct accordingly, we need not direct the entry of a permanent injunction. If the need for injunctive relief should arise after remand, the district court will be able to fashion an appropriate remedy.

invidious distinction between types of reli-   gious services.