**Joanne KARMEL and Kevin Karmel, Plaintiffs,**

v.

**CITY OF NEW YORK, et al., Defendants.**

**No. 00 CIV.9063(DAB).**

United States District Court, S.D. New York.

May 7, 2002.

Robert L. Herbst, Herbst & Greenwald, L.L.P., Joyce Morin Utz, Law Offices of Joyce Morin Utz, New York City, for Joanne Karmel, Kevin Karmel, plaintiffs.

Deborah Sharp, Corporation Counsel of the City of New York, New York City, for The City of New York, defendant.

Deborah Sharp, Corporation Counsel, City of New York, New York City, for Franco Russo, Kenneth Rosello, Harold Knorr, Terrence Quinn, Thomas Lohmann, Daniel Rizzo, Keniyatta Hollingsworth, Kimio Rivera, Daniel Crowley, Ann Fischer, Richard Cummins, Arthur Knour, M.D., Maureen Potrato, Robin MacFarlane, Ph. D., Lea Dann, M.D., defendants.

## MEMORANDUM & ORDER

BATTS, District Judge.

Plaintiffs, Detective Joanne Karmel and her husband Kevin Karmel, bring the instant action against sixteen individually named New York City Police Department ("NYPD") officers and medical personnel providing health care to police officers, as well as their employer, the City of New York (collectively "Defendants"), for the creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), for discriminatory retaliation in violation of Title VII, for gender-based discrimination under color of state law in violation of her civil rights under 42 U.S.C. § 1983, and for various related state law claims. Plaintiffs seek compensatory and punitive damages as well as fees and costs.

Subsequent to the suit's filing, on or about July 15, 2001, Defendants initiated investigative proceedings against Plaintiff Karmel, culminating in an interrogation to be conducted by an NYPD official. On July 23, 2001, this Court issued an Order temporarily enjoining the interrogation "until Defendants satisfy this Court that this hearing is necessary and appropriate." Defendants now submit that the interrogation should go forward as both necessary and proper. Plaintiff maintains that the

injunction should hold and that she should no longer be required to interact with individuals who she claims are acting in retaliation.

## I. BACKGROUND

Joanne Karmel joined the NYPD in 1983 and was assigned to the Queens District Attorney's Squad as a detective in 1994. (Compl.¶17.) She alleges that, while on the squad, she frequently heard or was the focus of overt sexual comments, some of which were made by her direct supervisor. (Compl.¶ 20–22.) On April 1, 1997, Plaintiff complained to another supervisor within the squad, who decided to set up a mediation between Plaintiff and her supervisor. (Compl.¶ 23.) Following this mediation, Plaintiff claims that her work environment dramatically deteriorated; in particular, she alleges that she was subsequently isolated from co-workers and that she received poor assignments on the job. (Compl.¶ 24–26.) Plaintiff filed two successive complaints with her department's Office of Equal Employment Opportunity, but alleges that the conduct about which she complained did not cease. (Compl.¶ 29, 39.) Plaintiff further alleges that these conditions caused her so much stress as to force her to request medical leave by 2000 and has resulted in a continued deterioration of her health. (Compl.¶ 31, 37.)

On November 28, 2000, Plaintiff filed the instant Complaint. On January 31, 2001, Plaintiff was suspended from duty for fifteen days. According to the Charges and Specifications served by the NYPD upon the Plaintiff, Defendant claims that, on that date, Plaintiff violated NYPD rules by reporting sick for the same condition she had claimed on a previous occasion and for which she had been evaluated and ordered to return to duty by NYPD medical personnel. (Def. 8/13/01 Lttr at 2.) On or about July 15, 2001, Plaintiff was subsequently advised that she was the subject of an official NYPD investigation and was to report for questioning on July 19, 2001. (Def. 8/13/01 Lttr at 2.) The questioning, or interrogation, (commonly known as a "GO–15") is an internal NYPD disciplinary administrative proceeding held pursuant to Patrol Guide Procedure No. 206–13, and is conducted after the subject of the investigation is "given a reasonable period of time to obtain and confer with counsel prior to questioning." (Def. 8/13/01 Lttr at 4.) Plaintiff alleges that the interrogation was to be conducted specifically by NYPD Medical Department Personnel. (Utz Decl. OSC at 2.) Refusal to answer questions put to the subject of the GO 15 Interrogation is sanctionable by a suspension from duty. (Utz Decl., Ex. 2 at 2, ¶ 13)

Defendant now argues that the GO 15 interrogation should proceed, as Plaintiff is unable to demonstrate either irreparable harm or a likelihood of success on the merits. Plaintiff argues that Defendant's submission falls short of the required opposing declarations or affidavits required by the July 23, 2001 Order to Show Cause and that the GO 15 is a thinly veiled attempt to harass and retaliate against Plaintiff and further, is "directly interfering with [plaintiff's] constitutional right to access to the courts and her ability to vindicate her rights in this lawsuit." (Utz Decl. ¶ 12.)

## II. DISCUSSION

### A. Federalism and Comity

Considerations of federalism and comity delineated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which preclude federal courts from enjoining pending state criminal proceedings also may apply to state administrative proceedings. *See,*

*e.g., McDonald v. Metro–North Commuter R.R. Div. Of Metro. Transit Auth.*, 565 F.Supp. 37, 39–40 (S.D.N.Y.1983) (applying *Younger* abstention principles to county police department's decision to suspend police officer); *see also McCune v. Frank*, 521 F.2d 1152 (2d Cir.1975) (the relevant lines of inquiry are whether "the proposed interference (in the state proceedings) ... is comparable to the disruption ... of the state's interest in maintaining the standards of its criminal laws," and whether the proceedings "involve much more than private litigation between individual litigants.") (quoting *Anonymous v. Association of the Bar of the City of New York*, 515 F.2d 427, 432 (2d Cir.1975)). Further, a judicial finding of bad faith, supported by "concrete evidence of retaliation or personal interest", is sufficient to justify federal intervention in a state administrative proceeding. *Schiavone Const. Co. v. New York City Transit Auth.*, 593 F.Supp. 1257, 1260 n. 4 (S.D.N.Y.1984).

Defendants argue that considerations of federalism and comity weigh strongly against this Court's intervention into the pending departmental inquiry. *See* Defs.' Mem. Law at 7. However, the cases cited by the City in support of its argument that abstention is warranted are unpersuasive. While this Court would ordinarily be reluctant to interfere in the NYPD's internal affairs, the situation at hand is not wholly internal. Plaintiff Karmel has filed suit in this Court and the NYPD's disciplinary interrogation is likely to interfere with the orderly and fair functioning of those proceedings in this Court. *See* discussion *infra*. Moreover, the disruption caused by enjoining the disciplinary proceedings while the federal case is active is not comparable to a disruption of the state's interest in "maintaining the standards of its criminal laws" such that abstention is appropriate. *See e.g., Alvarez v. City of New York*, 31 F.Supp.2d 334, 347 (S.D.N.Y. 1998) (enjoining NYPD disciplinary proceedings when such proceedings directly interfere with Plaintiff's right of access to the courts and ability to vindicate rights under Title VII).

The instant interrogation raises a real probability of being motivated by bias and retaliation by the NYPD and this Court need not wait until after the harm is done to protect the integrity of the Court's process and proceedings. Indeed, the NYPD administrative proceeding here was commenced only after the Plaintiff had brought suit against the city and the interrogation is apparently to be conducted by personnel of the Medical Division.[1]

Accordingly, principles of federalism and comity do not preclude this Court from enjoining the NYPD's proposed GO–15 interrogation. While the Court is mindful of those concerns, the Court shall consider the preliminary injunction on its merits.

### B. Preliminary Injunction

In the Second Circuit, it is well established that a party seeking issuance of a preliminary injunction must demonstrate (1) a threat of irreparable harm should the requested relief not be granted and (2) either (a) a likelihood of success on the merits of its case or (b) "sufficiently serious questions going to the merits to make them fair grounds for litigation *and* a balance of hardships tilting decidedly towards the [movant]." *See Jayaraj v. Scappini*, 66 F.3d 36, 38 (2d Cir.1995) (emphasis in original).

▮▮▮ Where, however, an injunction of governmental action taken in the public

---

**1.** This Court previously found that Plaintiff should not be required to interact with NYPD Medical Department personnel implicated in the suit. Specifically, on August 2, 2001, this Court ordered that "any further return to duty fitness tests required of Plaintiff during the pendency of this action shall be performed by non-NYPD medical personnel."

interest is sought, the moving party may not rely on the less rigorous "serious questions" alternative of the second prong, but instead must demonstrate a likelihood of success on the merits. *See Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989). This exception reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly. *Seabrook v. City of New York*, 1999 WL 694265 at *2 (S.D.N.Y. Sept. 7, 1999); *see NAACP v. Town of East Haven*, 70 F.3d 219, 223 (2d Cir.1995) (applying deferential standard where plaintiff attempted to en-

join hiring of police officers and firefighters); *Sweeney v. Bane*, 996 F.2d 1384 (2d Cir.1993) (applying deferential standard where plaintiffs attempted to enjoin N.Y. State Department of Social Services from implementing amendment); *Reynolds v. Giuliani*, 35 F.Supp.2d 331 (S.D.N.Y.1999) (applying deferential standard where plaintiffs sought to enjoin city officials from making certain changes to Medicaid procedures).[2] Defendants contend that Plaintiff has failed to address or establish the necessary elements for injunctive relief. Defs.' Mem. Law at 5.

1. *Irreparable harm*

■ In making a showing of irreparable harm, a movant must demonstrate that

---

**2.** In contrast, where the challenged act falls outside a regulatory framework, courts have adopted the less rigorous "serious questions" standard. *See Haitian Centers Council, Inc. v. McNary*, 969 F.2d 1326 (2d Cir.1992) (allowing lower standard where challenge was to INS policy formulated solely by executive branch); *Carey v. Klutznick*, 637 F.2d 834 (2d Cir.1980) (applying "serious questions" standard where injunction directed at Census Bureau methodology adopted outside regulatory framework).

Here, the proposed interrogation is conducted pursuant to Patrol Guide Procedure No. 206–13, which cannot be characterized as a legislative or regulatory rule implemented through a "reasoned democratic process." The suspension of duty was for a violation of Administrative Guide Procedure No. 318–13, also not a result of any lengthy public debate underpinning the principle of deference to governmental action. Consequently, such internally devised and implemented procedures arguably fall within the realm of government action which is not entitled to the higher degree of deference accorded to those taken pursuant to a regulatory or statutory scheme. *See e.g., Seabrook v. City of New York*, 1999 WL 694265 at *1 (S.D.N.Y. Sept. 7, 1999) (applying lower standard where challenged Department of Correction Directive was not implemented pursuant to legislation or regulation); *Reynolds v. Giuliani*, 35 F.Supp.2d 331, 339 (S.D.N.Y.1999) (applying lesser standard where injunction sought to compel City

defendants' compliance with federal and state law);. *But see Alvarez v. City of New York*, 31 F.Supp.2d 334, 342 (S.D.N.Y.1998) (applying more rigorous standard without comment to NYPD Interrogation Procedure). Moreover, the instant case can be distinguished from the circumstances of *Latino Officers Ass'n v. Safir*, 170 F.3d 167 (2d Cir.1999). In *Latino Officers*, the Second Circuit found that the more rigorous standard applied to the challenge of an NYPD Procedure governing police communication with the press and identified the City's "strong" interest underlying the Procedure of staying informed of police officers' public statements due to the "sensitive" nature of police work. 170 F.3d at 171. Here, the City's stated goal of Procedure 206–13 (Interrogation) is "to protect the rights of the member of the service (uniformed or civilian) in an official Department investigation." *See* Def. 8/13/01 Lttr. at Ex. B. This is far from a well-defined "public" interest and indeed, is exactly the interest the Plaintiff herself represents in seeking to enjoin the Interrogation. At the very least, this case may implicate the narrow exception established in *Haitian Ctrs. Council, Inc. v. McNary*, 969 F.2d 1326 (2d Cir.1992), vacated as moot, 509 U.S. 918, 113 S.Ct. 3028, 125 L.Ed.2d 716 (1993), allowing the "serious questions" standard where neither party "has an exclusive claim on the public interest." 969 F.2d at 1339.

Nevertheless, as discussed *infra*, Plaintiff establishes a likelihood of success on the merits.

there is a threat of actual injury for which available legal remedies are inadequate. *See Score, Inc. v. Cap Cities/ABC, Inc.,* 724 F.Supp. 194, 198 (S.D.N.Y.1989). "Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990).

█. The First Amendment Petition Clause protects the right to file suit for redress of grievances and the Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (Brennan, J., plurality opinion). The NYPD Interrogation proceedings presents a threat of irreparable harm to a plaintiff's right of access to the courts and to her ability to vindicate rights under Title VII. *See Alvarez,* 31 F.Supp.2d at 344. Indeed, the *Alvarez* court found that by enabling the interviewing officers to compel a plaintiff subject to disciplinary procedures to produce evidence in support of his claim outside the ordinary channels available in a lawsuit and without the requirement of reciprocal discovery, the NYPD disciplinary proceedings had hindered the interviewee's ability to effectively pursue his claim in court. *Id.* at 345.

In the matter at hand, Defendants essentially place Plaintiff Karmel between the Scylla of participating in the hearing without the safeguards of the Federal Rules of Civil Procedure, at the risk of prejudicing her action against Defendants, and the Charybdis of refusing to appear or to answer certain questions, at the risk of

being suspended without pay. *See* Utz Aff. ¶ 11. This Court sees no reason why it should wait for either of these ills to materialize as they did in *Alvarez* before finding that a threat of irreparable harm exists, nor should it minimize the impact of the forced interaction with the very entities who are part of her suit on the further deterioration of Plaintiff Karmel's health.[3]

Accordingly, this Court holds that Plaintiff has established the existence of a threat of irreparable harm should the disciplinary proceedings not be enjoined.

### 2. *Likelihood of success*

█ Plaintiff has also demonstrated a likelihood of success on the merits. To prevail in a Title VII action based on hostile work environment, a claimant must establish that the workplace was permeated with discriminatory intimidation, ridicule, and insult, which was sufficiently severe or pervasive to alter the work environment. *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 20–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Plaintiff must also "prove that the conduct at issue was not merely tinged with offensive connotations, but actually constituted discrimination because of sex [or other protected category]." *Oncale v. Sundowner,* 523 U.S. 75, 80–81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); 42 U.S.C. § 2000e 2(a)(1).

When evaluating a hostile work environment claim, the Court is required to use a "totality of the circumstances approach." *See Harris,* 510 U.S. at 23, 114 S.Ct. 367 ("whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances"). To support a Title VII claim, "[t]he incidents must be

---

**3.** Plaintiff has shown that she is likely to suffer possibly irreparable physical and psychological harm should the requested relief not be granted by this Court. The menacing injury in this case thus far has been so serious as to warrant preventive hospitalization for suicidal ideation. *See* Pls.' Mem. Law at 2.

more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Carrero v. N.Y.C. Hous. Auth.*, 890 F.2d 569, 577 (2d Cir.1989). Hostile work environments created by co-workers are imputed to employers unless they can show that they took appropriate measures to remedy the situation. *Kracunas v. Iona College*, 119 F.3d 80, 89 (2d Cir.1997).

Considering the totality of the allegations submitted by Plaintiff, a continuous pattern of sexually offensive incidents emerges and if true, may amount to a showing that the workplace was permeated with a magnitude of intimidation and ridicule sufficient to meet the *Harris* standard for hostile work environment claims.

 Further, Plaintiff has demonstrated a likelihood of success on her claim that she was being retaliated against for filing the EEOC charges and lawsuit alleging discrimination by the police department. *See Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 130 (2d Cir.1996) (setting forth requirements for a prima facie case of retaliation in a Title VII case). Immediately following the mediation which Plaintiff sought in a bid to address the recurrence of sexual comments directed towards her, she alleges that she was isolated by her superiors and her co-workers. *See* Compl. ¶ 24. She also alleges that she was assigned significantly less challenging work responsibilities and ultimately forced to transfer from a prestigious assignment to a far less prestigious post. *See* Compl. ¶ 25–26. There is evidence that the Interrogation as well constitutes an additional instant of retaliation, designed to hinder

her ability to vindicate her rights in this lawsuit.[4]

### III. CONCLUSION

This Court finds that a preliminary injunction of the departmental disciplinary proceedings is appropriate. Defendants' request that this Court allow the hearing to proceed in the manner they suggest is hereby DENIED.

SO ORDERED.

---

4. The Charges and Specifications filed against Plaintiff by the NYPD were contrary to the NYPD Procedure 318–13 itself, which requires that prior to the filing of charges, a "subsequent examination by a surgeon" is necessary where Chronic B sick category officers (like Plaintiff) report sick again for the same reason prior to their next scheduled tour of duty.