MEMORANDUM OF DECISION ON PLAINTIFF’S REQUEST FOR INJUNCTION
JANE W. FREEMAN, Judge.
The Plaintiff, a tribal member, has brought this action against the Mohegan Tribe of Indians of Connecticut (“the Tribe”) and the Mohegan Council of Elders (“COE”). He claims that certain provisions in The Tribal Membership Ordinance, MTC § 31-21, et seq.[1] are unconstitutional and that the COE’s pending “Good Standing” proceedings, on a complaint filed against him, violate the Mohegan Constitution and the Mohegan Court System Ordinance, MTC § 1-1, et seq.
On December 22, 2008, the Plaintiff filed a Request for Injunction seeking to enjoin the COE from conducting the pending “Good Standing” proceedings and from making any decision until the final disposition of this case. The Court held an evi-dentiary hearing on the Request for In *102 junction, at which the Plaintiff testified that if the “Good Standing” proceedings were not enjoined, he would suffer irreparable injury. Specifically, he claimed that his reputation would be injured and his vocation (running his blog) would be affected. In his Complaint, the Plaintiff also alleged that he would suffer injury because he “could be subject to the possible loss of rights, benefits and privileges’ “ as a result of the “Good Standing” determination (emphasis added). In his Request For Injunction, he claimed that a “Good Standing” determination based on “Good Standing” ordinances would likely affect press freedoms exercised by tribal members.
I. STANDARDS FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION
A preliminary injunction is issued to maintain the status quo until there can be a hearing on the merits. Sierra Club v. United States Corps of Engineers, 732 F.2d 253, 256 (2d Cir.1984). However, a “preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.” 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2948 (2d ed.1995); see also Ahmad v. Long Island University, 18 F.Supp.2d 245, 247 (E.D.N.Y.1998) (preliminary injunction an extraordinary measure); Hanson Trust PLC v. ML SCM Acquisition, Inc., 781 F.2d 264, 273 (2d Cir.1986) (preliminary injunction is “one of the most dramatic tools in the arsenal of judicial remedies”); Berrigan v. Norton, 451 F.2d 790, 793 (2d Cir.1971) (denial of extraordinary remedy of preliminary relief, as a matter of judicial discretion ... is not improper where there has been no clear showing of probability of success on merits and irreparable injury) (emphasis in original) (citations omitted). The four most important factors to be considered on an application for a preliminary injunction are:
(1) The significance of the threat of irreparable harm to plaintiff if the injunction is not granted;
(2) The probability that plaintiff will succeed on the merits;
(3) That state of the balance between this harm and the injury that granting the injunction would inflict on a defendant; and
(4) The public interest.
Wright, et al., supra, § 2948.
II. THE PLAINTIFF HAS FAILED TO OFFER SUFFICIENT EVIDENCE OF IRREPARABLE HARM
At the evidentiary healing, the Plaintiff verified the allegations in his Complaint and Request For Injunction. However, he did not present sufficient evidence to establish that he would suffer irreparable harm if the preliminary injunction were not granted.
The Plaintiff has alleged that his right to freedom of the press will be affected if the preliminary injunction is not granted. Freedom of the press is a right guaranteed under Article XI § 1(a) of the Mohegan Constitution[2] and under the In *103 dian Civil Rights Act, 25 U.S.C. §§ 1301-1303 (“ICRA”)[3]. The loss of First Amendment freedoms, for even minimal periods of time, normally constitutes irreparable injury. Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). While the First Amendment is inapplicable in tribal courts[4], cases arising thereunder are applicable to the free speech and free press clauses of the Mohegan Constitution and ICRA.
Courts in the Second Circuit have not consistently presumed irreparable harm in cases involving allegations of abridgement of First Amendment rights. See, e.g., Doninger v. Niehoff, 527 F.3d 41 (2008).
Where a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the ham may be presumed.... In contrast, in instances where a plaintiff alleges injury from a rule or regulation that may only potentially affect speech, the plaintiff must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of free speech rights. The Supreme Court instructs us on this issue in Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), that to establish a cognizable claim founded on the chilling of First Amendment rights, a party must articulate a “specific present objective harm or a threat of specific future harm.” (citation omitted).
Bronx Household of Faith v. Board of Educ., 331 F.3d 342, 349-50 (2d Cir.2003). The Plaintiff has only alleged that he “could be subject to the possible loss of rights, benefits and privileges” (emphasis added). He does not allege injury from a rule or regulation which directly limits his free press rights.
“Allegations of a ‘subjective chill’ [of First Amendment Rights] are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.” Land v. Tatum, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 2325-26, 33 L.Ed.2d 154 (1972) (citation omitted). The Defendants argue that the Plaintiffs subjective belief that initiation of “Good Standing” proceedings against him somehow violates the Mohegan Constitution or ICRA is insufficient to support a finding of irreparable harm. The Court agrees. The Plaintiff has failed to prove any objective present harm from the ongoing “Good Standing” proceedings. In addition, his fear or his subjective belief that his press freedoms may be affected by the “Good Standing” proceedings, do not warrant the granting of a preliminary injunction.
“In determining whether an applicant for injunctive relief has sufficiently demonstrated a threat of future ham ... a court should bear in mind that such relief may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury ... ”’ Raitport v. Provident National Bank, 451 F.Supp. 522, 530 (E.D.Pa.1978) (citing Holiday Inns of America, Inc. v. B & B Corp., 409 F.2d 614, 618 (3d Cir. *104 1969)). The “Good Standing” proceedings are not scheduled to commence until February 23, 2009. At the evidentiary hearing, the Plaintiff presented no evidence that the COE has prejudged the pending “Good Standing” complaint or that any particular decision is likely to be rendered. Further, the Plaintiff may not establish irreparable harm based upon the conjecture and speculation that the COE might determine that he violated The Tribal Membership Ordinance; or might revoke his “Good Standing” as a penalty; or that such revocation might have an actual chilling effect.
 The Plaintiff also claims that a preliminary injunction is necessary to prevent a violation of his due process rights. “An essential element of due process is that the deprivation of life, liberty, or property be preceded by notice and an opportunity for hearing appropriate to the nature of the case.’ ” Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1960)). Article XHI.d. of the Enrollment and Membership Office Rules and Procedures (“Rules and Procedures”), provides for notice and a hearing in connection with “Good Standing” proceedings. In fact, the Plaintiff has been given notice of a hearing date for February 23, 2009. The Plaintiff contends that the Rules and Procedures do not expressly permit the cross-examination of witnesses. However, he presented no evidence that he would not be able to cross-examine witnesses at the “Good Standing” hearing.
The Plaintiff also contends that because the COE is charged with hearing “Good Standing” complaints, it cannot sit as an appellate body in this case. Therefore, he argues that irreparable harm will result if he is deprived of the right to have the COE sit as an appellate body under the Mohegan Court System Ordinance, MTC § 1-1, et seq. The Mohegan Court System Ordinance provides for a right to appeal decisions of the Trial Court to the Court of Appeals. MTC § 1-81. Appeals from the Court of Appeals may be taken to the COE upon the granting of permission to appeal. MTC § 1-86. In the event that the COE is subject to a claim derived from its legislative/regulatory functions under the Mohegan Constitution, a Special Review Panel has jurisdiction to review decisions of the Mohegan Court of Appeals. MTC §§ 1-89 and 1-90. The Mohegan Constitution provides that the COE will serve multiple functions within its government.[5] Inherent in such a system is the potential for conflicts to arise between the COE’s judicial review authority and its legislative/regulatory authority. The Plaintiff has provided no evidence that he will suffer irreparable harm if a Special Review Panel is ever needed to sit as an appellate body in this case. There was no evidence presented that he could not have a fair hearing before a Special Review-Panel or that other tribal members would not be governed by the same procedures if the COE had a similar conflict in their cases.
*105 III. THE PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS
At this stage of the proceedings, the Plaintiff has failed to demonstrate a likelihood of success on his challenge to the constitutionality of MTC § 31—24(a)(6), MTC § 31—24(a)(8) or the “Good Standing” System. Where a moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, an injunction should be granted only if the moving party can demonstrate, in addition to irreparable harm, a likelihood of success on the merits. Latino Officers Ass’n v. Safir, 170 F.3d 167, 171 (2d Cir.1999).
The Defendant argues that the Plaintiff has not pointed to any tribal law which offends the provision in Article XI § 1(a) that the Mohegan Tribe shall not “make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances.” The Complaint has been drafted by a pro se party, however, and while it may be somewhat inartfully pled, the Plaintiffs clear intent was to plead that both MTC §§ 31-24(a)(6) and 31-24(a)(8), either when enacted or as applied, violate Article XI § 1(a) of the Mohegan Constitution. The Court, agrees with the Defendants’ argument, however, that these tribal laws are far attenuated from any free speech or free press rights the Plaintiff may have.
While it is not entirely clear whether the Plaintiff is asserting a due process or equal protection challenge to the “Good Standing” system, he has failed to demonstrate a likelihood of success on either constitutional challenge. As noted at page 5, supra, Article XHI.d, of the Rules and Procedures provides for notice and a hearing, essential components of due process, in connection with the “Good Standing” proceedings. Further, the Plaintiff provided no evidence that he would not be able to cross-examine "witnesses at the “Good Standing” proceeding. He has failed to demonstrate a likelihood of success on this due process claim.
The Plaintiff also argues that he will be deprived of the right to have the COE hear an appeal of the instant case (emphasis added). The Mohegan Constitution does not guarantee any tribal member, the right to have a judicial appeal heard by the COE. While the Constitution invests the COE with “[a]ll judicial review powers of the Mohegan Tribe not exercised by the Gaming Disputes Court,”[6] it also authorizes the Mohegan Tribal Council to vest other subordinate commissions and/or courts with judicial review powers.[7] In adopting MTC §§ 1-89 and 1-90, the Tribal Council has vested a Special Review Panel with authority to hear appeals from the Court of Appeals, and the Council is required to appoint such Special Review Panel if the COE is subject to a claim derived from its legislative/regulatory functions. These procedures are intended to apply uniformly, whenever the COE has a conflict or potential conflict arising from its legislative/regulatory functions. Therefore, the Plaintiff has failed to demonstrate a likelihood of success on his equal protection claim.
IV A BALANCING OF THE HARMS AND THE PUBLIC INTEREST WEIGH AGAINST THE GRANTING OF A PRELIMINARY INJUNCTION
The Plaintiff has offered no evidence that he will be harmed if the *106 “Good Standing” proceedings are held on February 23, 2009. Further, the COE is constitutionally vested with the power to establish and enforce membership and enrollment ordinances, Mohegan Const., Art. X § 2(j), and there is a presumption in favor of the lawfully established government proceedings challenged by the Plaintiffs.
The public interest would not be served by the granting of a preliminary injunction. Tribal membership and enrollment matters have been committed to the COE under Article X of the Mohegan Constitution. The vesting of such authority in the COE, is evidence of a tribal decision that it is in the best interests of tribal members (“the public interest”) to have the COE make “Good Standing” determinations.
V. CONCLUSION
The Plaintiff has failed to sustain his burden of proving that denial of the preliminary injunction will cause him irreparable harm. Nor has he proven a likelihood of success on the merits. Finally, the balance of harms weighs in favor of the Defendants and the issuance of a preliminary injunction would not be in the interests of Mohegan tribal members, where the COE, has been constitutionally vested with the exclusive power and authority over enrollment and membership matters.
For the foregoing reasons, the Plaintiffs Request For Injunction dated December 22, 2008 is hereby denied.

. MTC § 31-24 provides for the “Suspension of Tribal Rights, Benefits and Privileges” on various grounds. A member's "Good Standing” may be revoked under MTC § 31-24(a)(6) for “[w]illful misconduct of an egregious or repetitious nature, which results in significant harm to any person, property, or financial interest of the Tribe, or which is seriously detrimental to the Mohegan Tribe." It may also be revoked under MTC § 31-24(a)(8) for "[vjiolation of any policies or ordinances of the Mohegan Tribal Council or Council of Elders.” The Plaintiff challenges the constitutionality of both MTC §§ 31-24(a)(6) and 31-24(a)(8).

. The Mohegan Constitution provides in Article XI § 1 (a) as follows:
“The Mohegan Tribe, in exercising powers of self-government, shall make no law inconsistent with The Indian Civil Rights Act of 1968 (25 ÜSC 1301-1303; 82 Star 77), which requires that The Tribe not:
(a) make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;”

. 25 U.S.C. 1302(a) provides as follows:
“No Indian tribe in exercising powers of self-government shall—
(1) make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;”

. The protections of the United States Constitution are generally inapplicable to Indian Tribes, Indian courts and Indians on the reservation. United States v. Percy, 250 F.3d 720, 725 (9th Cir.2001). “ICRA and not the U.S. Constitution is the source of the rights.” Akins v. Penobscot Nation, 130 F.3d 482, 486 (1st Cir.1997).

. Article X of the Mohegan Constitution sets forth the powers and duties of the COE. These powers and duties include judicial review powers, as well as legislative and regulatory functions. The COE has the power to establish and enforce ordinances governing tribal membership and enrollment. Mohegan Const., Art. X § 2(j). To address potential claims arising against the COE related to its legislative and regulatory functions, the Mohegan Court System Ordinance provides for a Special Panel Review to hear appeals from the Mohegan Court of Appeals.

. Mohegan Const., Art. X § 1.

. Id.