*Keepers Inc. v. City of Milford*

# In the
# United States Court of Appeals
## for the Second Circuit

---

AUGUST TERM 2014

Nos. 14-1581-cv (Lead); 14-2113-cv (XAP)

KEEPERS, INC., DBA KEEPERS, FKA SIDEPOCKETS, INC.,
*Plaintiff-Appellant-Cross-Appellee*,

v.

CITY OF MILFORD,
*Defendant-Appellee-Cross-Appellant*,

v.

SIDEPOCKETS, INC., DBA KEEPERS, AFTER DARK LLC,
DBA ROMANTIX ADULT EMPORIUM,
*Plaintiffs-Cross-Appellees*.

---

On Appeal from the United States District Court
for the District of Connecticut

---

ARGUED: MAY 18, 2015
DECIDED: NOVEMBER 20, 2015

Before: CABRANES, RAGGI, and CHIN, *Circuit Judges*.

———

Plaintiff Keepers, Inc. ("Keepers") and defendant City of Milford, Connecticut ("Milford" or "the City") appeal and cross-appeal, respectively, from partial summary judgment awards to each party by the United States District Court for the District of Connecticut (Alvin W. Thompson, *Judge*). This case presents two questions related to Chapter 2.3 Milford's municipal code, which regulates "adult-oriented establishments." The first is whether the District Court improperly considered the affidavit of Milford Chief of Police Keith Mello in granting partial summary judgment for the City. Keepers argues that the District Court should have struck the affidavit because it contradicted testimony given by Milford's former city attorney in a deposition taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. We conclude that the District Court did not "abuse its discretion" in considering the affidavit, and we accordingly **AFFIRM** the District Court's partial summary judgment award to the City.

The second question is whether the City's requirement that sexually oriented businesses publicly post the names of their operators, officers, and significant owners violates the First Amendment. Keepers does not appeal a judgment by the District Court upholding that requirement with respect to individuals who operate, manage, or control such businesses, but Milford appeals the

award of partial summary judgment in favor of Keepers holding the requirement unconstitutional with respect to passive owners and officers. The District Court should not have reached the merits of that issue, nor does this Court do so, because Keepers' First Amendment challenge does not present a justiciable case or controversy under Article III of the U.S. Constitution. Accordingly, we **VACATE** the District Court's partial judgment for Keepers insofar as it reached the merits of the public-posting requirement, and we **REMAND** the cause to the District Court with direction to dismiss that claim for lack of subject-matter jurisdiction.

---

JENNIFER M. KINSLEY (Daniel A. Silver, Silver & Silver LLP, New Britain, CT, *on the brief*), Kinsley Law Office, Cincinnati, OH, *for Plaintiff-Appellant-Cross-Appellee*.

SCOTT D. BERGTHOLD (James N. Tallberg, Karsten & Tallberg LLC, West Hartford, CT, *on the brief*), Law Office of Scott D. Bergthold, Chattanooga, TN, *for Defendant-Appellee-Cross-Appellant*.

---

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiff Keepers, Inc. ("Keepers") and defendant City of Milford, Connecticut ("Milford" or "the City") appeal and cross-

3

appeal, respectively, from partial summary judgment awards to each party by the United States District Court for the District of Connecticut (Alvin W. Thompson, *Judge*). This case presents two questions related to Chapter 2.3 Milford's municipal code, which regulates "adult-oriented establishments." The first is whether the District Court improperly considered the affidavit of Milford Chief of Police Keith Mello in granting partial summary judgment for the City. Keepers argues that the District Court should have struck the affidavit because it contradicted testimony given by Milford's former city attorney in a deposition taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. We conclude that the District Court did not "abuse its discretion" in considering the affidavit, and we accordingly **AFFIRM** the District Court's partial summary judgment award to the City.

The second question is whether the City's requirement that sexually oriented businesses publicly post the names of their operators, officers, and significant owners violates the First Amendment. Keepers does not appeal a judgment by the District Court upholding that requirement with respect to individuals who operate, manage, or control such businesses, but Milford appeals the award of partial summary judgment in favor of Keepers holding the requirement unconstitutional with respect to passive owners and officers. The District Court should not have reached the merits of that issue, nor does this Court do so, because Keepers' First Amendment challenge does not present a justiciable case or controversy under Article III of the U.S. Constitution. Accordingly, we **VACATE** the

4

District Court's partial judgment for Keepers insofar as it reached the merits of the public-posting requirement, and we **REMAND** the cause to the District Court with direction to dismiss that claim for lack of subject-matter jurisdiction.

## I. BACKGROUND

### A. Milford's Regulation of "Adult-Oriented Establishments"

Since 1996, Milford has regulated sexually oriented businesses ("SOBs"[1]) through its Ordinance Regulating Adult-Oriented Establishments, which forms Chapter 2.3 of its municipal code. In 2003, Milford amended Chapter 2.3 to add several new restrictions on SOBs, including regulations for live performances involving nudity, new licensing requirements for operators of SOBs, and periodic inspections.[2] Most relevant here, the amended ordinance required an SOB to obtain an "adult-oriented establishment" license—which had to state the names of everyone who applied for

---

[1] The Milford ordinances usually refer to "adult-oriented establishments," but they sometimes speak of "sexually oriented businesses" or "SOBs," as do the parties and much of the relevant case law. We follow the District Court in using the latter term. *See Keepers, Inc. v. City of Milford, Conn.*, 944 F. Supp. 2d 129, 138 n.1 (D. Conn. 2013).

[2] Milford, Conn., Ordinances § 2.3 (2003); *see Keepers*, 944 F. Supp. 2d at 138. Except as noted, subsequent statutory references are to the Milford municipal code.

it—and to post it "in a conspicuous place at or near the entrance . . . so that it [could] be easily read at any time."[3]

Keepers fell within the scope of the 2003 ordinance. Keepers had been owned since 2001 by Joseph Regensberger, who initially operated the business as a restaurant and bar called Sidepockets.[4] In 2002, however, Regensberger decided to convert Sidepockets into a "cabaret-style nightclub" featuring clothed and "seminude" female "dance entertainment."[5] He accordingly obtained from the City the necessary adult-entertainment license pursuant to Chapter 2.3.[6]

In December 2003, shortly after Milford amended Chapter 2.3, Keepers filed suit in the District Court, challenging the ordinance's constitutionality. The City agreed not to enforce the ordinance while the litigation was pending.

In 2007, Milford repealed and replaced the ordinance.[7] Many of the provisions in the 2007 ordinance were similar to those they replaced, although some requirements, such as those governing

---

[3] § 2.3-4(5) (2003).

[4] App. 53. References to "App." refer to the Appendix of Plaintiff-Appellant-Cross-Appellee Keepers.

[5] Affidavit of Joseph Regensberger, Doc. 52-6, at 2 ("Regensberger Affidavit").

[6] *Id.*

[7] *See Sidepockets, Inc. v. City of Milford, Conn.*, 528 F. Supp. 2d 34, 35 (D. Conn. 2007); App. 57.

"adult arcades"—booths for viewing sexually explicit films—were stricter.[8] Most relevant here, the 2007 ordinance introduced a more demanding public-posting requirement. Like the 2003 ordinance, the 2007 ordinance required an SOB to post its "adult-oriented establishment" license conspicuously near its entrance. But the 2007 ordinance expanded the list of individuals whose names had to appear on a license application—and, by extension, on the publicly posted license itself. Under the 2003 ordinance, the license had to include only the names of "operators"[9] and "any other persons directly involved in the management or control of the adult-oriented establishment."[10] But the 2007 ordinance broadened that list to include "each person with an influential interest" in the SOB or in "a legal entity that controls" it.[11] The 2007 ordinance defined "influential interest" to include "[a]ny of the following":

> (1) the actual power to operate the sexually oriented business or control the operation, management or policies of the sexually oriented business or legal entity which operates the sexually oriented business,

---

[8] App. 57-58.

[9] "*Operator* means any person, or any proprietor, shareholder, general partner or limited partner who participates in the management or day-to-day operations and/or control of the establishment." § 2.3-2(14) (2003) (emphasis in original).

[10] §§ 2.3-4(3); 2.3-5 (2003); *see* App. 140.

[11] § 2.3-4(d) (2007).

7

(2) ownership of a financial interest of thirty percent (30%) or more of a business or of any class of voting securities of a business, or

(3) holding an office (e.g., president, vice president, secretary, treasurer, managing member, managing director, etc.) in a legal entity which operates the sexually oriented business.[12]

In short, the 2007 ordinance required SOBs to publicly post the names of operators, managers, officers, and anyone owning at least thirty percent of the business.

Soon after Milford passed the 2007 ordinance, and while the earlier suit was still pending, Keepers brought a second lawsuit in the District Court, this time challenging the new law.[13] Around the same time, Keepers changed owners. Regensberger had encountered several setbacks, including a brief suspension of his liquor license in 2003 as a result of alleged misbehavior by dancers at Keepers, and the loss of his liquor license in 2007 due to prostitution at another establishment he owned. In 2008, he sold Keepers to his bartender,

---

[12] *Id.* § 2.3-2.

[13] In its second suit, Keepers was joined as plaintiff by After Dark LLC ("After Dark"), which does business as Romantix Adult Emporium. After Dark sells sexually oriented merchandise and operates an adult "arcade." App. 52, 54-55. Although Milford named it as a cross-appellee, After Dark does not join Keepers in this appeal.

Angela Silano, whom the record indicates to be the company's president and sole owner.[14]

In October 2008, the District Court consolidated Keepers' first and second lawsuits,[15] and both parties subsequently moved for summary judgment.[16] In its motion, Keepers challenged the 2003 and 2007 ordinances on a number of constitutional grounds,[17] and it also asserted that the ordinances violated the zoning requirements of Conn. Gen. Stat. § 8-2. Most relevant for this appeal, Keepers argued that the public-posting requirements of the 2003 and 2007 ordinances violated Keepers' "owners', employees' and entertainers' [First Amendment] right to anonymity while engaging in expressive

---

[14] App. 54-55; *see* Regensberger Affidavit, Doc. 52-6, at 1-2; Affidavit of Angela Silano, Doc. 52-7, at 1 ("Silano Affidavit"). Keepers asserts for the first time on appeal that Keepers' current president is not Silano but Julia Kish. Keepers Supp. Br. 4. This assertion has no effect on our decision. As a threshold matter, our review is generally limited to "the original papers and exhibits filed in the district court," Fed. R. App. P. 10(a)(1), and we ordinarily do not consider "material not included in the record on appeal," *see Loria v. Gorman*, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002). Even if "extraordinary circumstances" warranting an exception to our usual practice were presented here, *see Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975), treating Kish as Keepers' president would make no difference in our reasoning. *See* note 137, *post*.

[15] App. at vii.

[16] App. at viii-ix.

[17] Keepers invoked the First Amendment, the Fourth Amendment, the Takings Clause of the Fifth Amendment, and the Ninth Amendment; it also brought challenges based on facial and as-applied vagueness and on deprivation of due process under the Fourteenth Amendment. *Keepers*, 944 F. Supp. 2d at 137.

activities."[18] Specifically, Keepers urged the District Court to apply so-called intermediate scrutiny[19] and strike down the public-posting requirements because they did not further a substantial governmental interest.[20]

In response, Milford argued that it had "a substantial interest in regulating those who control and operate sexually oriented businesses."[21] Specifically, Milford contended that the public-posting requirement allows "City officials and law enforcement agents to readily identify those who are responsible for the operation of a

---

[18] Keepers Br. Summ. J., Doc. 51, at 60, 61.

[19] "Intermediate scrutiny" applies to "regulations of expressive activity that are not based on content." *Hobbs v. Cty. of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005). A regulation survives intermediate scrutiny if it is "'reasonable,' [is] 'narrowly tailored to serve a significant governmental interest,' and 'leave[s] open ample alternative channels for communication of the information.'" *Id.* (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). "The narrow tailoring requirement is satisfied so long as the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation." *Id.* (internal quotation marks and ellipsis omitted); *see generally N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 257-58 (2d Cir. 2015) (noting that the Supreme Court first introduced the notion of differing levels of scrutiny in *United States v. Carolene Products Co.*, 304 U.S. 144, 153 n.4 (1938)).

[20] Keepers Br. Summ. J., Doc. 51, at 60. Elsewhere in its briefing before the District Court, Keepers refused to "concede that any standard less than strict constitutional scrutiny applies." *See id.* at 22. But most of Keepers' argument "assume[d] that intermediate scrutiny is the correct standard," and it never argued that the posting requirement had to further a compelling governmental interest, as would be true under so-called strict scrutiny. *See id.* at 22-23, 59-60.

[21] *Keepers*, 944 F. Supp. 2d at 173 (internal quotation marks omitted).

sexually oriented business for purposes of routine inspections and criminal investigations."[22]

On March 30, 2013, the District Court granted nearly all of Milford's motion for summary judgment and denied nearly all of Keepers' motion.[23] Applying intermediate scrutiny, the Court agreed that Milford had a "substantial interest" in readily knowing who was responsible for operating an SOB, and that there was a "substantial relation between the City's interest" and the requirement that SOBs display the names of their operators.[24] The Court accordingly upheld the 2003 ordinance's posting requirement.

The Court went on to find, however, that the 2007 ordinance's posting requirement was "unconstitutionally broad."[25] Posting the names of owners and officers not involved in the actual operation of an SOB, the Court reasoned, lacked "a substantial relationship" to the City's asserted interest.[26] Accordingly, the Court invalidated the 2007

---

[22] *Id.*

[23] The District Court granted partial summary judgment to each party in an order of March 30, 2013, although the District Court did not enter a separate judgment as required by Rule 58 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 58(a) ("Every judgment and amended judgment must be set out in a separate document . . . .").

[24] *Keepers*, 944 F. Supp. 2d at 173.

[25] *Id.* at 174.

[26] *Id.* It is not entirely clear whether the District Court held unconstitutional the 2007 ordinance's requirement that the names of *officers* be posted. Its opinion suggests as much. *See id.* at 174 ("[P]osting the names of

ordinance insofar as it "require[d] the posting of the names of individuals who do not manage, operate or control the sexually oriented business."[27]

## B. The Mello Affidavit

Keepers' complaint alleged that various provisions of Chapter 2.3 were unconstitutionally vague. During discovery, Keepers sought to substantiate that allegation by developing evidence that City officials interpreted Chapter 2.3 in a manner inconsistent with its

---

individuals based merely on their status as a 30% shareholder *or an officer* not involved in the management, operation or control of the sexually oriented business is not substantially related to the City's interest in enforcing the ordinance. . . . Thus, the court concludes that § 2.3–5(c) of the 2007 ordinance is unconstitutional to the extent that it requires the posting of the names of individuals who do not manage, operate or control the sexually oriented business." (emphasis supplied)). But in its subsequent Order of March 28, 2014, the Court declined to respond to Milford's argument about posting the names of officers "because the court did not find that requirement unconstitutional." App. 151 n.1. In this appeal, Milford seems to have adopted the interpretation provided by the March 28 Order—*i.e.*, that the Court upheld its ordinance with respect to officers—while Keepers seems to have supposed the opposite. We assume that the District Court ruled as its opinion suggests, and that the Court struck down the 2007 public-posting requirement with respect to *shareholders and officers* "not involved in the management, operation or control of the sexually oriented business." *Keepers*, 944 F. Supp. 2d at 174. Nonetheless, our disposition of this appeal would not differ if the District Court had actually upheld the 2007 ordinance insofar as it applied to Keepers' officers.

[27] *Keepers*, 944 F. Supp. 2d at 174.

plain meaning or in a manner that gave inadequate notice of the conduct proscribed.[28]

On December 5, 2008, Keepers served a notice of deposition on the City pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.[29] Rule 30(b)(6) permits a party to depose an organization, including a governmental entity, by sending it a notice of deposition "describ[ing] with reasonable particularity the matters for examination." After receiving such notice, the organization must designate someone familiar with the matters described in the notice to testify on its behalf. If the organizational deponent fails to comply by "mak[ing] available such number of persons as will be able to give complete, knowledgeable and binding answers on its behalf," a court may impose sanctions under Rule 37 of the Federal Rules of Civil Procedure, "including the preclusion of evidence."[30]

---

[28] *See* Keepers Br. 2-3; Keepers Reply Br. 6-7.

[29] Fed. R. Civ. P. 30(b)(6) provides in relevant part:

In its notice or subpoena, a party may name as the deponent a public or private corporation, . . . a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization.

[30] *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) (internal quotation marks omitted). Fed. R. Civ. P. 37(a)(3)(B)(ii) permits a party seeking

Keepers' Rule 30(b)(6) notice of deposition listed thirty-one matters related to the drafting, passage, and enforcement of Chapter 2.3.[31] Most relevant here, the notice identified as a matter for deposition "[t]he definition and interpretation of any provisions of Chapter 2.3 which are not specifically defined in that ordinance."[32]

discovery to move for an order compelling designation if "a corporation or other entity fails to make a designation under Rule 30(b)(6)." If a corporation fails to comply with such an order, the court may impose the sanctions specified in Rule 37(b)(2)(A), which include

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

> (iii) striking pleadings in whole or in part;

> (iv) staying further proceedings until the order is obeyed;

> (v) dismissing the action or proceeding in whole or in part;

> (vi) rendering a default judgment against the disobedient party; or

> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Rule 37(d)(1)(A)(i) provides for similar sanctions if "a person designated under Rule 30(b)(6) . . . fails, after being served with proper notice, to appear for that person's deposition." "Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

[31] App. 161-66.

[32] App. 162.

Neither Keepers' complaint nor its notice of deposition identified which provisions of Chapter 2.3 Keepers believed to be vague, and its notice did not specifically identify which terms and provisions it planned to address during the deposition.

The City responded to Keepers' notice of deposition by designating its former municipal attorney, Marilyn Lipton, who gave deposition testimony for Milford on January 8, 2009. At the start of the deposition, Milford's attorney stated that, while Lipton had authority pursuant to Rule 30(b)(6) to testify on Milford's behalf, she was "not authorized to contradict the ordinance text."[33]

During her deposition, Lipton was unable to answer various questions regarding the potential application and interpretation of Chapter 2.3.[34] She was unable, for instance, to explain whether an "assistant manager" would fall within the 2007 ordinance's definition of someone having an "influential interest" in an SOB;[35] whether the City could revoke an SOB employee's license for failing to stop another employee from "doing something wrong";[36] and whether mandated "buffer zones" between dancers and patrons would be

---

[33] App. 172.

[34] *See Keepers*, 944 F. Supp. 2d at 158 (noting that Keepers identified 33 instances in which Lipton said she was uncertain or unable to answer various questions).

[35] App. 223

[36] App. 252-53.

15

measured from "front of body [to] front of body" or based on the distance between other body parts.[37]

In its motion for summary judgment in August 2009, Keepers identified several provisions of Chapter 2.3 that it argued were unconstitutionally vague, relying on Lipton's deposition for support.[38] In its November 2009 response to Keepers' motion, Milford filed an affidavit by Chief of Police Keith Mello (the "Mello Affidavit"), who was primarily responsible for administering the ordinance. The Mello Affidavit offered "additional guidelines regarding the interpretation and enforcement of Chapter 2.3,"[39] with particular focus on those provisions that Keepers' motion had identified as vague.[40]

In December 2009, Keepers moved to strike the Mello Affidavit, arguing that it impermissibly contradicted Lipton's deposition testimony. Keepers also moved for discovery sanctions. The District Court denied Keepers' motions and relied on the Mello

---

[37] App. 264. Chapter 2.3 requires six-foot "buffer zones" between patrons and dancers. *See* § 2.3-17(b) (2007).

[38] *Keepers*, 944 F. Supp. 2d at 158 (noting Keepers' argument that Lipton "had little to no understanding as to how the words, phrases, and provisions contained within the ordinance are to be applied and/or enforced" (quoting Keepers Br. Summ. J., Doc. 51, at 11)).

[39] App. 313.

[40] Keepers had deposed Mello in January 2009 as an individual witness, but not pursuant to Rule 30(b)(6). Dep. of Keith Mello, Doc. 55-3, at 3.

Affidavit in awarding summary judgment to the City on Keepers' vagueness challenge.[41] The District Court concluded that "[i]t would be unfair to ignore" the Mello Affidavit and to rely solely on the Lipton Deposition, "in which the plaintiffs succeeded in surprising a deponent not charged with enforcement of the ordinance with hypotheticals that served to 'stump' her."[42]

## C. The Appeal

Both parties appealed the District Court's partial grant and partial denial of summary judgment. Keepers appealed the denial of its motion to strike the Mello Affidavit and asked that the case be remanded for reconsideration of its vagueness challenge. Milford cross-appealed the District Court's judgment that the 2007 ordinance's public-posting requirement violates the First Amendment with respect to officers and shareholders not involved in the operation of an SOB.

In an Order entered on October 2, 2015, we identified *nostra sponte* two issues not addressed by the parties or the District Court: whether Keepers has "standing" to challenge the public-posting requirements; and, if Keepers does have standing, whether the public-posting requirements violate the First Amendment's

---

[41] App. 46-47 (Order of Sept. 28, 2010).

[42] *Keepers*, 944 F. Supp. 2d at 159.

17

prohibition of "compelled speech."[43] We accordingly asked the parties to file supplemental letter briefs addressing these questions.

## II. DISCUSSION

## A. The District Court's Consideration of the Mello Affidavit

We first address whether the District Court erred in considering the Mello Affidavit when awarding summary judgment to Milford with respect to Keepers' vagueness challenge.

We review a district court's evidentiary and discovery rulings for "abuse of discretion."[44] "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions."[45]

On appeal, Keepers challenges the District Court's decision to allow Milford to supplement the deposition testimony of its Rule

---

[43] The District Court considered Keepers' standing with respect to several of its claims, including its vagueness challenges, *id.* at 151-53, First Amendment overbreadth challenge, *id.* at 160, and various challenges to Chapter 2.3's criminal disability provisions, *id.* at 162-63. The District Court did not, however, consider standing with respect to the public-posting requirement.

[44] *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 102 (2d Cir. 2008); *Arlio v. Lively*, 474 F.3d 46, 51 (2d Cir. 2007); *see also In re City of New York*, 607 F.3d 923, 943 n.21 (2d Cir. 2010) (explaining that "abuse of discretion" is a nonpejorative term of art).

[45] *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks, alteration, and citation omitted).

30(b)(6) witness with an affidavit from another witness. "Because the deponent's answers constitute the official testimony of the governmental entity itself," Keepers argues, "the government may not later contradict" the deponent's testimony "with the affidavit of another official."[46] As a result, it asserts, the District Court should have refused to consider the Mello Affidavit.

Milford offers several counterarguments. First, it argues that even if a deponent's *factual* conclusions bind an organizational deponent, its *legal* conclusions do not. Second, Milford asserts that Keepers' notice of deposition failed to comply with Rule 30(b)(6)'s requirement that the deposing party "describe with reasonable particularity the matters for examination," and that Milford was therefore entitled to supplement its deposition testimony on subjects about which it had received inadequate notice. Finally, Milford argues that even if the District Court erred in considering the affidavit, any error was harmless, because the Court would have reached the same conclusion in any event.

We affirm the District Court's decision to consider the Mello Affidavit for two reasons. First, we agree with Milford that a Rule 30(b)(6) deponent may supplement or amend legal interpretations offered by its designated witness. Second, even if the District Court "abused its discretion" in considering the Mello Affidavit, any error was harmless.

---

[46] Keepers Br. 3.

### 1. The "Binding" Nature of Rule 30(b)(6) Testimony

Keepers misunderstands how testimony pursuant to Rule 30(b)(6) binds a party. Keepers rightly notes that an organization's deposition testimony is "binding" in the sense that whatever its deponent says can be used against the organization.[47] But Rule 30(b)(6) testimony is not "binding" in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements.[48] Nothing in the text of the Rule or in the Advisory Committee notes indicates that the Rule is meant to bind a corporate party irrevocably to whatever its designee happens to recollect during her testimony.[49] Of course, a party whose testimony "evolves" risks its credibility, but that does not mean it has violated the Federal Rules of Civil Procedure.[50]

Indeed, Keepers itself came to a similar conclusion earlier in this litigation. During the Lipton Deposition, Milford objected to questions requiring Lipton to give precise answers based on 2,000 pages of evidence. Its counsel emphasized that if Lipton answered a question with "I don't know," she should be taken to mean, "I don't

---

[47] *See Reilly*, 181 F.3d at 268.

[48] *See* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2103 (3d ed. 2015); 7-30 James Wm. Moore et al., *Moore's Federal Practice* § 30.25 (3d ed. 2015).

[49] *See A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001).

[50] *See R & B Appliance Parts, Inc. v. Amana Co.*, 258 F.3d 783, 786-87 (8th Cir. 2001).

know without reviewing all 2,000 pages right now," and that such an answer should "not preclude the city's reliance on anything in the record at summary judgment."[51] The attorney for Keepers agreed: "I am sure that if there's something that is in [the record] that is responsive to any arguments that we're going to be making, you will pull it out in response to our motion for summary judgment."[52] Accordingly, the parties proceeded under the assumption that Lipton's recollection did not limit what evidence Milford could present.

Although the parties' exchange focused on Milford's right to supply additional *facts*, a Rule 30(b)(6) deponent may also amend and expand its *legal conclusions*. Courts have held repeatedly that a party is "entitled to produce contrary evidence" that contradicts legal interpretations offered during a deposition.[53] The statements to which Keepers seeks to bind Milford are primarily interpretations of law—whether or how Chapter 2.3 applies to various situations—rather than facts concerning the drafting or history of the ordinance. The rule that organizational deponents may supplement their Rule 30(b)(6) testimony thus applies with special force in the present case.

---

[51] App. 230.

[52] *Id.*

[53] *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229 n.9 (3d Cir. 2009); *see R & B Appliance*, 258 F.3d at 786-87.

Some deponents will, of course, try to abuse Rule 30(b)(6) by intentionally offering misleading or incomplete responses, then seeking to "correct" them by offering new evidence after discovery. Appropriate remedies are available for such situations. For instance, as Keepers points out, the "sham-affidavit rule" prevents a party from manufacturing an issue of fact "by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."[54] But that rule has no relevance here. A subsequent witness does not "contradict" a Rule 30(b)(6) deponent when that witness offers information about which the deponent had disclaimed knowledge or expressed uncertainty.[55] With one minor exception,[56] the Mello Affidavit did not "contradict" Lipton's earlier testimony but instead filled in its gaps.

Rule 37 also empowers district courts to correct abuses in the deposition process. If a deponent fails to satisfy Rule 30(b)(6) by refusing to designate a witness or producing an unprepared witness, the court may order sanctions, including the preclusion of evidence.[57]

---

[54] *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) (internal quotation marks omitted).

[55] *See id.*

[56] This exception involved inconsistent legal conclusions about the meaning of the term "regularly" as it is used in the 2007 ordinance, rather than contradictory statements of fact. Keepers Br. 8, ¶ 1; App. 197, 313.

[57] *Reilly*, 181 F.3d at 268; *see also Black Horse Lane Assocs. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) ("[W]e hold that when a witness is designated by a

But we cannot conclude that such sanctions would be appropriate here, much less that the District Court "abused its discretion" by failing to employ them against Milford.[58]

Keepers identifies no authority that cuts against these settled principles. Indeed, the contrast between the instant case and *Reilly v. Natwest Markets Group Inc.*, the principal case on which Keepers relies, is illuminating.[59] In *Reilly*, a corporate defendant was served with a Rule 30(b)(6) notice asking it to produce representatives familiar with the work performed by the plaintiff, its former employee. In response, the defendant produced a single witness, "despite [the plaintiff's] complaints that [the witness] was not sufficiently knowledgeable,"[60] in what was apparently an effort to frustrate the plaintiff's discovery.[61] As a result, the district court refused to allow two other witnesses for the defendant—whom the defendant had declined to produce for its Rule 30(b)(6) deposition— to testify on the same subject at trial.

---

corporate party to speak on its behalf pursuant to Rule 30(b)(6), producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)." (alteration and internal quotation marks omitted)); *Kyoei Fire & Marine Ins. v. M/V Mar. Antalya*, 248 F.R.D. 126, 152 (S.D.N.Y. 2007) (same).

[58] Keepers moved for sanctions before the District Court, but on appeal, the only "sanction" it seeks is the striking of the affidavit. *See* Keepers Br. 12.

[59] 181 F.3d 253 (2d Cir. 1999).

[60] *Id.* at 268.

[61] *See id.* at 268-69.

This case differs from *Reilly* in two important respects. First, unlike the corporate defendant in *Reilly*, Milford produced as its witness the person it considered to be most familiar with the subject matter at issue.[62] Although Lipton's testimony may have been inadequate, the District Court found that that inadequacy flowed not from the kind of willful obstruction apparent in *Reilly* but rather from Keepers' decision to "surpris[e]" Lipton[63] with "various hypothetical scenarios" not identified in the notice of deposition.[64] Second, the defendant in *Reilly* wanted to frustrate discovery, but Milford had every incentive to be as forthcoming as possible in order to defeat Keepers' claim of vagueness. Indeed, forcing Lipton to answer "I don't know" was precisely what Keepers hoped to achieve.[65]

As the District Court recognized, the process by which Milford ultimately answered Keepers' questions was not "a route that is to be preferred."[66] Ideally—perhaps after receiving more particularized notice of what Keepers wanted to know—Lipton herself would have been prepared to offer more precise answers during her deposition. If Milford believed that Keepers' Rule 30(b)(6) notice failed to describe the matters for deposition with adequate particularity, Milford could

---

[62] *See* Milford Br. 4.

[63] *Keepers*, 944 F. Supp. 2d at 159.

[64] App. 46 (Order of Sept. 28, 2010).

[65] *See* Keepers Br. 8-11.

[66] App. 47 (Order of Sept. 28, 2010).

have objected prior to the deposition. Alternatively, Keepers might have requested an additional Rule 30(b)(6) deposition, perhaps of Mello. But the "management of discovery and trial" belongs "to the sound discretion of the district court."[67] We have no trouble concluding that the District Court did not "abuse" that discretion in admitting the Mello Affidavit.

## 2. Harmless Error

Even if the District Court erred by considering the Mello Affidavit, that error was harmless, because excluding the affidavit would not have affected the outcome of the case.[68]

The District Court considered the Lipton Deposition and Mello Affidavit in connection with its evaluation of Keepers' argument that certain provisions of Chapter 2.3 were unconstitutionally vague. An ordinance can be unconstitutionally vague "for either of two independent reasons": (1) "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,"[69] or (2) if it "does not provide explicit standards for those who apply it."[70]

---

[67] *Willey v. Kirkpatrick*, 801 F.3d 51, 72 (2d Cir. 2015).

[68] *See* Fed. R. Civ. P. 61; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

[69] *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).

[70] *Id.* at 191 (internal quotation marks and alteration omitted).

As the District Court noted, a court evaluating a challenge for vagueness must "begin[ ] with the text of the ordinance" itself.[71] Based on its reading of Chapter 2.3—without relying on the Lipton Deposition or the Mello Affidavit—the District Court concluded "that the ordinance here is clear on its face" and thus satisfied the first prong of the vagueness analysis.[72]

In evaluating the second prong, the District Court again focused, as it should have, primarily on the ordinance's plain meaning. The Court also considered whether Milford officials interpreted Chapter 2.3 in a manner "consistent with" its text.[73] The Court concluded that the ordinance itself gave sufficiently clear guidance and that the officials charged with enforcing the ordinance had adopted an interpretation consistent with its text.[74] Accordingly, the Court concluded that Chapter 2.3 also satisfied the second prong of the vagueness analysis.

The Court's findings would not have changed had the Court excluded the Mello Affidavit. The Court concluded that the ordinance was clear on its face without relying on any extrinsic evidence at all. Had the Court relied solely on the Lipton Deposition in deciding whether the ordinance gave sufficient guidance to law

---

[71] *Id.* at 187; *see Keepers*, 944 F. Supp. 2d at 151.

[72] *Keepers*, 944 F. Supp. 2d at 158.

[73] *See VIP of Berlin*, 593 F.3d at 192.

[74] *Keepers*, 944 F. Supp. 2d at 158-59.

enforcement, the most the Court could have concluded was that Milford lacked an "official position" on how to apply several provisions of Chapter 2.3 to various hypothetical situations.[75] But that conclusion alone would not have supported a finding of vagueness. When the text of an ordinance is sufficiently clear to satisfy the Due Process Clause, a municipal official's inability to supply precise answers regarding its hypothetical application is insufficient to render that ordinance unconstitutionally vague.[76] The Mello Affidavit thus had no effect on the District Court's ultimate conclusion. Accordingly, the judgment of the District Court in favor of Milford with respect to Keepers' vagueness challenge is **AFFIRMED**.

## B. The Public-Posting Requirement

We now turn to whether Milford's public-posting requirements violate the First Amendment. Keepers does not appeal the District Court's judgment insofar as it upheld the 2003 public-posting requirement and part of the 2007 requirement. Milford, however, urges us to reverse the District Court's judgment insofar as it invalidated part of the 2007 ordinance. Milford argues that the District Court erred in assuming that mere ownership of an SOB is expressive conduct protected by the First Amendment. It argues in the alternative that even if owning an SOB qualifies as expressive

---

[75] *Id.* at 158.

[76] *See VIP of Berlin*, 593 F.3d at 191.

conduct, the posting requirement should nevertheless survive because it is narrowly tailored and advances an important governmental interest.

We need not—indeed, we cannot—resolve either issue today. Undertaking our constitutional duty to assure ourselves that this case is justiciable, we have determined that three distinct jurisdictional barriers preclude Keepers from challenging the public-posting requirements. We conclude that Keepers lacked both (1) prudential and (2) constitutional standing to challenge the public-posting requirements based on third parties' rights to anonymous expression, and (3) even if Keepers had standing below based on its right against compelled speech, a justiciable controversy no longer exists at this stage of the litigation.[77] Accordingly, we **VACATE** the judgment of the District Court with respect to the 2003 and 2007 public-posting requirements and **REMAND** with instructions to dismiss Keepers' challenge to those requirements for lack of subject matter jurisdiction.

## 1. Whose First Amendment Rights Are at Stake?

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "Cases" or "Controversies."[78] "One element of the

---

[77] Courts may consider prudential standing, constitutional standing, and mootness in any order. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 (1997); *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 747 F.3d 44, 48 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1399 (2015).

[78] U.S. Const. art. III, § 2 ("The judicial Power [of the United States] shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws

case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."[79] To establish constitutional standing, a plaintiff must demonstrate (1) that it has "suffered an injury in fact," which is (2) "fairly traceable to the challenged action of the defendant," and (3) "likely" to "be redressed by a favorable decision."[80] In addition to these core constitutional requirements, litigants must also satisfy "prudential standing," which "embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'"[81] Prudential standing includes, *inter alia*, "the general prohibition on a litigant's raising another person's legal rights" and "the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches [of government]."[82] "The party invoking federal jurisdiction bears the

---

of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;— between a State and Citizens of another State,—between Citizens of different States,—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."); *see Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013).

[79] *Clapper*, 133 S. Ct. at 1146 (internal quotation marks omitted).

[80] *Hedges v. Obama*, 724 F.3d 170, 188 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[81] *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 91 (2d Cir. 2009) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)).

burden of establishing" prudential and constitutional standing,[83] but courts may raise the issue *sua sponte*, including for the first time on appeal.[84]

One purpose of standing doctrine is to ensure that "the plaintiff at issue is the appropriate plaintiff to bring a claim."[85] It matters, in other words, whose rights a plaintiff asserts. The District Court assumed that the plaintiffs before it—a corporation and a limited liability company—were asserting "*their* First Amendment right to engage in speech anonymously."[86] But that would have been an odd claim indeed for a business like Keepers, which markets its services to "the consenting adult *public*."[87] Corporations sometimes seek to hide their identities,[88] but not usually from their patrons.

A closer examination of Keepers' filings reveals that the company has asserted not its own right to remain anonymous but

---

[82] *Elk Grove*, 542 U.S. at 12 (internal quotation marks omitted).

[83] *See Lujan*, 504 U.S. at 561; *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014).

[84] *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

[85] *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126 (2d Cir. 2003).

[86] *Keepers*, 944 F. Supp. 2d at 172 (emphasis supplied).

[87] *Id.* at 151 (emphasis supplied) (internal quotation marks omitted).

[88] *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366-67 (2010) (describing a corporation's challenge to a disclosure requirement).

that of its officers, shareholders, and other third parties. Before the District Court, for instance, Keepers argued that Milford's public-posting requirements "impermissibly and severely infringe upon the *owners'*, *employees'* and *entertainers'* right to anonymity while engaging in expressive activities."[89] In its appellate brief, Keepers again stresses the right of "[*o*]*wners* of adult businesses" "to fund sexually explicit expression" anonymously.[90] Throughout its argument, Keepers refers either to an impersonal "right to anonymous free expression" or, more often, to the rights of "[p]assive [o]wners,"[91] "shareholders," and "officers."[92] Keepers' brief even converts the District Court's focus on *Keepers'* constitutional rights into a holding about the rights of "*partial owners of sexually oriented businesses.*"[93] In short, Keepers has consistently asserted not its own right to anonymous expression—which would make little sense for a business that markets its services to the public—but the rights of third parties.[94]

---

[89] Keepers Br. Summ. J., Doc. 51, at 61 (emphasis supplied).

[90] Keepers Reply Br. 8 (emphasis supplied)

[91] *Id.*

[92] *Id.* at 10.

[93] *Id.* at 11 (emphasis supplied); *cf. Keepers*, 944 F. Supp. 2d at 172. Similarly, Keepers describes the City as arguing against the right of "business owners, officers, and stakeholders" to "engage in anonymous expression . . . by maintaining an ownership interest in an adult business." Keepers Reply Br. 8.

[94] In its supplemental brief, Keepers asserts for the first time that it challenges the public-posting requirements "on both its own behalf and on behalf

31

Therefore, to the extent that Keepers challenges the public-posting requirements based on a First Amendment right of anonymous expression, its challenge hinges on Keepers' constitutional and prudential standing to assert the rights of its owners and officers. Corporations, like other organizations, sometimes have standing to assert the rights of third parties.[95] But because a "corporation is a distinct legal entity" from its shareholders

---

of" affected third parties. Keepers Supp. Br. 2. But even in that brief, Keepers nowhere asserts its *own right to anonymous expression*, relying instead on its right to sue on behalf of its owners and officers or on other rights—distinct from anonymity—allegedly possessed by Keepers itself.

[95] *See* note 107, *post*. A corporation's standing to assert the rights of third parties should not be confused with its standing to assert claims on its own behalf, even though those claims may ultimately benefit its owners, officers, or employees. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005) (Sotomayor, J.); *cf. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2768 (2014) ("An established body of law specifies the rights and obligations of the *people* (including shareholders, officers, and employees) who are associated with a corporation in one way or another. When rights, whether constitutional or statutory, are extended to corporations, the purpose is to protect the rights of these people." (emphasis in original)); *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1156 (10th Cir. 2006) (finding that a sexually oriented business had standing to challenge an ordinance that directly harmed the business itself).

and officers,[96] courts are not permitted to simply assume its standing to assert the rights of those third parties.[97]

## 2. Prudential Standing

We begin by considering the "prudential standing rule" that "normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves."[98]

Keepers argues that prudential standing concerns are irrelevant here because "[c]ourts have generally dispensed with the rule that a party [must] assert its own legal rights and not the rights of third parties when First Amendment free speech rights are at stake."[99] Keepers misunderstands the nature of that dispensation. Courts have relaxed prudential standing requirements to permit

---

[96] *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014) (internal quotation marks omitted); *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities.").

[97] *See Mid-Hudson Catskill Rural Migrant Ministry*, 418 F.3d at 174 (indicating that plaintiffs bear the burden of demonstrating third-party standing).

Keepers cites *Genusa v. City of Peoria*, 619 F.2d 1203, 1216 (7th Cir. 1980), for the proposition that a "corporation . . . ha[s] standing to challenge disclosure requirements that applied to officers, directors, and stockholders of a corporate licensing applicant." Keepers Supp. Br. 3. *Genusa*, however, involved a suit brought by "owners of and employees in" a sexually oriented business, not by the business itself. *See Genusa*, 619 F.2d at 1208.

[98] *Rajamin*, 757 F.3d at 86 (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)).

[99] *See* Keepers Supp. Br. 3.

challenges based on First Amendment *overbreadth*.[100] Keepers, however, has not advanced such a challenge here. Although Keepers' supplemental brief repeatedly characterizes its claim as one of "overbreadth," that word appears neither in its principal brief nor in the section of its summary judgment brief that addresses the public-posting requirement.[101]

Keepers previously omitted mentioning overbreadth for a good reason: it has based its challenge on the "[q]uite different" basis of third-party (or *jus tertii*) standing.[102] In an overbreadth challenge, a plaintiff "claims that although a statute did not violate his or her First

---

[100] *See, e.g., Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 957-58 (1984); *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

[101] In contrast, Keepers attacked as overbroad the prohibition on minors' entering SOBs, Keepers Br. Summ. J., Doc. 51, at 40-43; the requirement of a "buffer zone" between customers and "semi-nude" "employees," *id.* at 51-52, and the "no-touch" provision, *id.* at 57.

Although the District Court referred to the 2007 ordinance as "unconstitutionally broad," context shows that the Court was referring to the absence of "a substantial relationship between [Milford's asserted] governmental interest and the information required to be posted"—*i.e.*, the ordinance's failure to satisfy intermediate scrutiny—and not to the constitutional doctrine of overbreadth as relevant for standing purposes. *See Keepers*, 944 F. Supp. 2d at 174. As noted above, the District Court never considered Keepers' standing to challenge the public-posting requirements; Keepers had not advanced an overbreadth argument; and the District Court invoked none of the typical overbreadth standards or doctrines in reaching its decision, *see* Milford Br. 36-37.

[102] *See* Richard H. Fallon, Jr., John F. Manning, Daniel J. Meltzer & David L. Shapiro, *Hart & Wechsler's The Federal Courts and the Federal System* 164 (7th ed. 2015) (internal quotation marks omitted) ("*Hart & Wechsler*").

Amendment rights, it would violate the First Amendment rights of hypothetical third parties if applied to them."[103] In contrast, a case based on third-party standing involves a plaintiff's claim "that a single application of a law both injures him and impinges upon the constitutional rights of third persons."[104] Keepers' challenge is plainly of the latter variety.[105]

"Typically, a plaintiff who asserts the claims of a third party can obtain standing by establishing (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests."[106] Even if we assume that Keepers and the relevant third parties have a sufficiently close relationship to satisfy the first prong of this test,[107] Keepers has not shown, or even alleged, that its

---

[103] *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006).

[104] *Hart & Wechsler* 164 (internal quotation marks omitted).

[105] *See, e.g.*, Keepers Supp. Br. 2 ("The Milford ordinance therefore injures Keepers directly . . . .").

[106] *Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015) (internal quotation marks omitted).

[107] *See, e.g.*, *Int'l Harvester Co. v. Wisc. Dep't of Taxation*, 322 U.S. 435, 440 (1944) (finding that a corporation had standing to present its stockholders' constitutional objections to a tax); *Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 200 (2d Cir. 2012) (allowing a kosher delicatessen and butcher shop to join with its "shareholders, directors, and officers" in asserting free exercise claims); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1120 (9th Cir. 2009) (holding that a corporation has standing to assert the free exercise rights of its owners); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 574 (3d Cir. 1980) (finding that an employer has standing to assert the privacy interests of its employees). *But see Polaroid Corp. v. Disney*, 862 F.2d 987, 1000 & n.8 (3d Cir. 1988) (finding that a

owners and officers would have any difficulty asserting their own interests. As a result, it has failed to offer any reason for us to lift the prudential bar against asserting the rights of others.

In reaching this conclusion, we emphasize the limited nature of our holding, which reflects the absence of any suggestion in the briefs or the record that Keepers' owners or officers would face any difficulty in defending their own interests. We recognize that litigants seeking to protect their anonymity may have strong reasons for suing through a third-party organization rather than in their own names.[108] But those reasons do not apply here. Keepers' owners and officers have already identified themselves publicly during the course of this litigation, and we have seen no evidence that they would face "threats, harassment, or reprisals" from bringing a case in their own names.[109] On the present record, then, Keepers has offered no reason to depart from the normal rule that a litigant must assert its own rights, not those of a third party.

---

corporation lacks third-party standing to challenge a tender offer on behalf of its shareholders).

[108] *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958) (noting that requiring a litigant to defend her own right to anonymity would "result in nullification of the right at the very moment of its assertion").

[109] *See John Doe No. 1 v. Reed*, 561 U.S. 186, 201 (2010) (internal quotation marks omitted).

### 3. Constitutional Standing

Even if we had reason to relax the prudential requirements of third-party standing, Keepers would still lack constitutional standing, because it has not satisfied Article III's injury-in-fact requirement.

A litigant may assert the rights of others only if the litigant itself satisfies Article III's requirements of injury-in-fact, causation, and redressability.[110] The injury-in-fact requirement demands not only the existence of a legally cognizable injury, but also that the plaintiff itself be "among the injured."[111] In addition, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."[112] In other words, Keepers' undisputed standing to challenge Chapter 2.3 based on vagueness does not confer standing to challenge the public-posting requirements based on its officers' and owners' rights of anonymous expression.[113]

---

[110] *See Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington Union Free Sch. Dist.*, 478 F.3d 494, 498 (2d Cir. 2007); *see also Hedges*, 724 F.3d at 204 (noting that a plaintiff who challenges a law based on First Amendment overbreadth must still demonstrate that it suffered an injury-in-fact sufficient for Article III standing).

[111] *Lujan*, 504 U.S. at 563 (internal quotation marks omitted).

[112] *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted).

[113] Neither does its standing to challenge the public-posting requirement as a violation of its right against compelled speech, a subject we address in Section II.B.4, *post*.

In its motion for summary judgment, Keepers alleged several ways in which Milford's ordinances have harmed its constitutional and economic interests. But neither in its appellate briefs nor before the District Court has Keepers explained how the alleged infringement of its officers' and owners' anonymity rights has caused it any harm. The closest it comes to doing so is through its suggestion that the public-posting requirements might "chill" Keepers' expression.[114] But "purely conjectural" assertions of a potential "chill" are insufficient,[115] and Keepers offers no "objective evidence to substantiate [its] claim that the challenged regulation has deterred [it] from engaging in protected activity."[116]

Nor is Keepers able to claim constitutional standing based on its assertion that the public-posting requirement "injures Keepers directly by requiring it to participate in violating its owners' right of privacy."[117] Even if Keepers' statement were factually true,[118] it

---

[114] *See* Keepers Br. Summ. J., Doc. 51, at 59, 62; *see also* Keepers Supp. Br. 2 ("The injury Keepers seeks to redress on its own behalf is the chilling effect on corporate expression that is exerted by the requirement that the individuals who own the business be publicly outed.").

[115] *Int'l Action Ctr. v. City of New York*, 587 F.3d 521, 529 (2d Cir. 2009); *see also Latino Officers Ass'n v. Safir*, 170 F.3d 167, 170 (2d Cir. 1999) ("Allegations of a subjective chill of First Amendment rights are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." (internal quotation marks and alteration omitted)).

[116] *Latino Officers Ass'n*, 170 F.3d at 170 (internal quotation marks and alteration omitted).

[117] Keepers Supp. Br. 2.

would fail to give Keepers the kind of "particularized stake in the litigation" needed to satisfy Article III.[119] Keepers asserts, in essence, that it is especially offended by Milford's alleged violation of the First Amendment. But mere discomfort occasioned by an asserted constitutional violation, no matter how sharply felt, is insufficient to confer standing.[120]

It is not difficult to imagine situations in which a burden on the First Amendment rights of a firm's owners, officers, or employees might generate a legally cognizable injury to the firm itself.[121] Standing, however, "cannot be inferred, but must affirmatively appear in the record,"[122] and it is Keepers' burden to demonstrate

---

[118] As we discuss in Section II.B.4, *post*, that part of Chapter 2.3 at issue on appeal has no demonstrated effect on the anonymity of any individual.

[119] *Lance v. Coffman*, 549 U.S. 437, 442 (2007).

[120] *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 485-86 (1982) ("[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy."); *cf. Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 693-94 (7th Cir. 2015) (finding no standing based on the plaintiff's allegedly being "forced to participate in a discriminatory scheme"); *Thomas v. Mundell*, 572 F.3d 756, 761 (9th Cir. 2009) ("[A] public official's personal dilemma in performing official duties that he perceives to be unconstitutional does not generate standing." (internal quotation marks omitted)).

[121] *See* note 107, *ante*.

[122] *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 161 (2d Cir. 2003) (internal quotation marks omitted).

that the alleged infringement of third parties' constitutional rights has injured Keepers itself.[123] Keepers has not met that burden here.

## 4. Mootness on Appeal

In its supplemental brief, Keepers argues for the first time in this litigation that the public-posting requirement violates its First Amendment "right to be free from government-compelled expression."[124] According to Keepers, even if it lacked standing below to pursue a claim based on the right to anonymous expression, we can nonetheless uphold the District Court's judgment on this alternative ground. Assuming *arguendo* that Keepers did not forfeit this argument by failing to present it below or in its principal brief,[125] mootness precludes us from considering it.[126]

---

[123] *See Rajamin*, 757 F.3d at 84-85.

[124] Keepers Supp. Br. 4.

[125] In general, we do not address on appeal issues not sufficiently raised in a party's principal brief. *See Norton v. Sam's Club*, 145 F.3d 114, 117-18 (2d Cir. 1998). Nonetheless, we may affirm a district court "on any basis supported by the record, even one not relied on by the lower court," and "[a]lthough it behooves appellees to raise all their defenses on appeal . . . we are not aware of any case requiring them to do so." *Universal Church v. Geltzer*, 463 F.3d 218, 229 (2d Cir. 2006); *cf. Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991) ("[A] party need not cross-appeal in order to assert an alternate ground based on the record to support a district court decree.").

[126] Mootness would also preclude us from considering Keepers' appeal with respect to anonymous expression, if we had not already disposed of that appeal on standing grounds. *See* note 77, *ante (*noting that courts may address standing and mootness in either order).

"The case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate."[127] A dispute that is live when suit is filed remains so only for as long as the parties continue to have a "concrete stake in the outcome."[128] There is "no case or controversy, and a suit becomes moot," when the parties cease to have "a legally cognizable interest in the outcome" of the case.[129]

When this litigation started, the alleged injury and the nature of the dispute would have been clear: Chapter 2.3 required Keepers to post names that it did not want to post. As a result, the requirement potentially implicated the right of Keepers' owners and officers to express themselves anonymously, as well as Keepers' own First Amendment right against compelled speech. At this stage of the litigation, however, that injury has disappeared.

The 2007 ordinance requires an SOB to post publicly the names of individuals who (1) have "actual power" to operate the business or control its "operation, management or policies"; (2) own at least thirty percent of the business; or (3) are officers of a legal entity that operates the business.[130] The District Court upheld this requirement

---

[127] *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (internal quotation marks omitted).

[128] *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000).

[129] *Chafin*, 133 S. Ct. at 1023 (internal quotation marks omitted).

[130] § 2.3-2 (2007).

except as it applies to individuals who "do not manage, operate or control the sexually oriented business."[131] Because Keepers does not appeal that decision,[132] the only posting-related issue before this Court is the 2007 ordinance's requirement that SOBs post the names of "[p]assive [o]wners" and officers.[133] In other words, what is at stake in this appeal is whether Keepers must display the names of those individuals who fall within the scope of the 2007 ordinance's public-posting requirement but "do not manage, operate or control" the business.[134] We have seen no evidence that such persons exist. The record indicates that Keepers has no passive shareholders, but only a single owner, Angela Silano, who also serves as the company's president and, as far as the record indicates, sole officer.[135] Therefore, Keepers will have to display Silano's name—regardless of the outcome of this appeal—under that part of the 2007 ordinance which the District Court upheld and which Keepers no longer challenges.[136]

---

[131] *Keepers*, 944 F. Supp. 2d at 174.

[132] *See* Keepers Reply Br. 12.

[133] *Id.* at 8.

[134] *Keepers*, 944 F. Supp. 2d at 174.

[135] *See* Regensberger Affidavit, Doc. 52-6; Silano Affidavit, Doc. 52-7.

[136] As president and sole owner, Silano undoubtedly has power to, and does, "operate" or "control" Keepers. *See* § 2.3-2 (2007); *see also Keepers*, 944 F. Supp. 2d at 174.

That part of the 2007 public-posting requirement invalidated by the District Court has no effect on Silano's anonymity, and Keepers has identified no other shareholders or officers whose anonymity might be implicated. As a result, we can identify no individual whose anonymity is potentially at stake in this appeal, nor will this appeal affect what information Keepers itself would be compelled to display.[137]

In short, this appeal is moot, both with respect to Keepers' third-party anonymity claim and its compelled-speech claim. Although Milford has a stake in defending the constitutionality of its ordinance, Keepers no longer has any concrete interest in the result of this appeal. As a result, this case now lacks "that concrete

We note that Silano would also have been required to post her name under the 2003 ordinance—if Milford had not repealed it—as an "officer or partner" of Keepers, since Silano is the only officer who appears in the record. *See* § 2.3-5 (2003).

[137] In its supplemental brief, Keepers asserts for the first time that the current "president, secretary, and director of Keepers, Inc." is not Silano but Julia Kish. Keepers Supp. Br. 4. As noted above, this assertion is irrelevant to our decision. Even if we were to relax our normal rule against considering new facts on appeal, *see* note 14, *ante*, Keepers has merely identified another third party who already lacks anonymity, not only because of this litigation, but because her name is already associated with Keepers on the website of the Connecticut Secretary of State. *See* Keepers Supp. Br. 4. Moreover, as "president, secretary, and director," Kish would have to include her name on Keepers' license as a person with "actual power to operate the sexually oriented business" or to control its operation. *See* §§ 2.3-2; 2.3-4(d) (2007). Keepers' supplemental brief did not identify any other shareholder or officer, besides Kish, whose anonymity might be implicated.

43

adverseness which sharpens the presentation of issues,"[138] and which is necessary for a case to remain "fit for federal-court adjudication."[139]

### 5. Summary and Disposition of Keepers' Challenge to the Public-Posting Requirements

We hold that Keepers lacks prudential and constitutional standing to challenge the public-posting requirements based on its owners' and officers' right of anonymous expression. We therefore **VACATE** the District Court's judgment insofar as it reached the merits of this challenge and **REMAND** with direction to dismiss that claim. Insofar as Keepers urges us to uphold the judgment based on its own right against compelled speech, we find the appeal moot and **DISMISS** it accordingly.

### III. CONCLUSION

To summarize, we hold as follows:

(1) The District Court did not "abuse its discretion" in considering the Mello Affidavit; and even if the District Court did err, its error was harmless, because it had no effect on the Court's resolution of Keepers' vagueness challenge.

---

[138] *See Camreta v. Greene*, 131 S. Ct. 2020, 2028 (2011) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).

[139] *Id.* (quoting *Arizonans for Official English*, 520 U.S. at 67).

(2) We do not reach the merits of Keepers' First Amendment challenge to the public-posting requirements, because neither this Court nor the District Court has subject-matter jurisdiction to consider the issue.

    a. Keepers challenged the public-posting requirement based on an asserted "First Amendment right to anonymous expression," but the anonymity at stake is that of Keepers' owners and officers, not that of Keepers itself.

    b. The doctrine of "prudential standing" generally bars litigants from asserting the rights of third parties. Keepers has failed to show why we should permit it to assert the rights of its owners and officers in the present case.

    c. Article III of the U.S. Constitution does not permit a plaintiff to sue unless it has suffered a legally cognizable injury. Keepers has failed to show that the public-posting requirement has injured the corporation itself—as opposed to its officers, owners, or related third parties.

    d. Even if Keepers originally had standing to challenge the public-posting requirement in the District Court based on its asserted right against compelled speech, the case has become moot on appeal. Based on the record before us, Keepers' president and sole owner

will be required to list her name on Keepers' posted license, regardless of who prevails before this Court. We therefore lack jurisdiction to decide this appeal on the merits.

For the foregoing reasons, we **AFFIRM** the District Court's March 30, 2013 judgment insofar as it denied Keepers' motion to exclude the Mello Affidavit. We also **VACATE** that part of the March 30, 2013 judgment concerning plaintiff's First Amendment challenge to the public-posting requirements and **REMAND** to the District Court with direction to dismiss that claim for lack of subject-matter jurisdiction. Insofar as Keepers urges us to uphold the judgment based on its own claimed right against compelled speech, we **DISMISS** the appeal as moot.